## UNITED STATES BANKRUPTCY COURT FOR THE
## DISTRICT OF MARYLAND
### Baltimore Division

| | | |
|---|---|---|
| *In Re:* | * | Case No. 25-184-ELG |
| *Swain Landing LaPlata JC, LLC* | * | U.S. Bankruptcy Court for the District of |
| | * | Columbia |
| **Debtor** | * | |
| *   *   *   *   *   *   | * | |
| *Claudia Engelhorn, et al.* | * | Case No.: 25-00159 |
| | * | U.S. Bankruptcy Court for the District of |
| **Plaintiffs** | * | Maryland |
| | * | |
| *v.* | * | Case No.: C-24-CV-002631 |
| | * | Circuit Court for Baltimore City, |
| *Erik D. Bolog, et al.* | * | Maryland |
| | * | |
| | * | |
| **Defendants** | * | |

*********************************************************************************

### PLAINTIFFS' RESPONSE IN OPPOSITION TO THE BOLOG DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING PETITION FOR AN ORDER COMPELLING ARBITRATION AND STAYING PROCEEDINGS[1]
#### (Hearing Requested)

Plaintiffs, by and through their undersigned counsel, hereby file this Response in Opposition to the Bolog Defendants' Motion to Reconsider Order Denying Bolog Defendants' Petition for an Order Compelling Arbitration and Staying Proceedings, and respectfully state as follows:

---

[1] The Bolog Defendants filed their Motion to Reconsider in the Circuit Court for Baltimore City, Maryland, before this action was removed to the U.S. Bankruptcy Court for the District of Maryland. Plaintiffs /Counter-Defendants dispute that this motion should be considered by the Bankruptcy Courts, and will be filing motions seeking abstention and/or remand as well as moving for the dismissal of *In Re: Swain Landing LaPlata JC, LLC*, Case No.: Case No. 25-184-ELG in the U.S. Bankruptcy Court for the District of Columbia. Moreover, Debtor's Motion to Transfer Venue from this Honorable Court to the U.S. Bankruptcy Court for the District of Columbia is currently pending. Plaintiffs reserve the right to supplement and amend this Opposition. Plaintiffs/Counter-Defendants do no consent to the entry of final orders or judgment by the Bankruptcy Court.

## INTRODUCTION

The Circuit Court for Baltimore City has already denied *two* prior petitions to compel arbitration in this action, and it should likewise deny this **third** attempt to compel arbitration, which Defendants have styled as a Motion for Reconsideration.  Defendants Erik Bolog, in his individual capacity ("Mr. Bolog") and as Trustee for the JAREB Irrevocable Trust Agreement Dated October 11, 2021 ("JAREB"), Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc., ("Darnestown") (collectively, the "Bolog Defendants"), have petitioned the Circuit Court to compel arbitration with respect to *some* of the causes of action herein.  On June 4, 2025, the Circuit Court for Baltimore City denied the Bolog Parties' Petition. Thereafter, on June 9, 2025, the Bolog Defendants filed the instant Motion for Reconsideration This Honorable Court should likewise deny the Motion to Reconsider because the Whitewater Revocable Trust Dated September 30, 2021 (hereinafter "Whitewater" or "the Trust") is alleged by the Bolog Defendants to be subject to Virginia law, which holds that arbitration terms in trusts are unenforceable as a matter of law.  Moreover, the Bolog Defendants have waived their right to arbitrate the claims at issue because they have actively participated in this litigation and have filed a Counterclaim which, if the arbitration provision was enforceable, would have fallen within the scope of the agreement to arbitrate and they have demanded jury trials with respect to the same. Defs.' Exhibit B.  Moreover, Ms. Engelhorn, as the settlor/grantor for the Trust, retains unfettered discretion to modify or amend the terms of the Trust, which she has exercised.  Additionally, the Petition must be denied for the same reasons that this Honorable Court already denied Defendant Whiteford, Taylor & Preston, LLP's ("WTP") Petition to compel arbitration: because it would be violative of Maryland's strong public policy as set forth in the MARPC.

## FACTUAL HISTORY

On or about September 30, 2021, Plaintiff Engelhorn, with the assistance of Defendant WTP and its attorneys, including Mr. Bolog, established the Whitewater Revocable Trust dated September 30, 2021, and named Defendant Bolog as one of the Trustees.  SAC ⁋⁋ 31 and 33.  As part of the creation of Whitewater, Mr. Bolog and other lawyers at WTP drafted the "Revocable Trust Agreement of Claudia Engelhorn."  *See* Defs.' Exhibit A. Ms. Engelhorn was the grantor/settlor.  The co-trustees were Mr. Bolog and Ms. Engelhorn. Ms. Engelhorn was also the sole beneficiary of Whitewater during her lifetime.  *See* Defs.' Exhibit A, Section 2.  Ms. Engelhorn reserved the right to revoke or amend the Agreement in whole or in part "without the consent of any other person."  *See* Defs.' Exhibit A, Section 8.  Regarding arbitration, the Trust provided:

> Any controversy between **the trustees**, or **between any other parties to this trust**, **including beneficiaries**, involving the **construction** or **application** of any of the terms, provisions, or conditions of this trust agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

Defs.' Exhibit A Section 9 (emphasis supplied).  Finally, Virginia Law governs the "validity and construction of the agreement…"  Defs.' Exhibit A Section 10.

It is alleged that after WTP and Bolog drafted the Trust, Mr. Bolog engaged in misconduct of multiple varieties concerning legal services rendered to the Plaintiffs, and as is relevant to the pending Petition, he used Whitewater's, Ms. Engelhorn's, and White Pearl, LLC's funds to invest in business ventures in which Mr. Bolog had a personal interest, without obtaining Ms. Engelhorn's informed consent and making the necessary disclosures required by law and his ethical obligations.  *See* SAC, generally.  Mr. Bolog's misconduct led to Ms. Engelhorn amending and restating the Whitewater Trust Agreement on November 3, 2022.  SAC ⁋5 and 58.  The

November 3, 2022, amendment and restatement removed Mr. Bolog as the Trustee for Whitewater. *Id*. Thereafter, Ms. Engelhorn amended and restated the Whitewater Trust Agreement a second time on May 15, 2023.

## PROCEDURAL HISTORY

The Plaintiffs, including, but not limited to, Claudia Engelhorn, as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, filed the present action in the Circuit Court for Baltimore City, Maryland. Plaintiffs filed the instant lawsuit on September 10, 2024. Plaintiffs subsequently filed an Amended Complaint on October 30, 2024. On November 15, 2024, WTP filed a Petition for an Order Compelling Arbitration and Staying Proceedings and a Motion to Dismiss or Stay. In response to said Petition, the Bolog Defendants filed a Response on December 17, 2024, which asserted that "[n]one of the claims against the Bolog Defendants is subject to arbitration…" Exhibit 1. During the January 27, 2025, hearing on WTP's Petition, the Bolog Defendants vigorously argued that the Plaintiffs' claims were not subject to arbitration, making such representations as the following:

> This case should not go to arbitration. And the reason why that is, is because the sole arbitration clause that occurred in this case is in fact the retainer letter regarding -- and it says, "regarding all claims regarding the estate of Curt Engelhorn."

Exhibit 2, 31:9-14 (Transcript January 27, 2025).

> But here, there is no arbitration clause relevant to any of the issues that are brought in the complaint by the Plaintiff. So we have no we have no dog in the fight, but it seems clear to me that there is no fight.

Exhibit 2, 32:13-17.

On November 11, 2024, Bolog Defendants also filed a Motion to Strike certain allegations in the Amended Complaint, a Motion for a More Definite Statement, and a Motion to Dismiss for failure to state a claim. During the January 27, 2025 hearing, the Court ordered that the Plaintiffs amend their Complaint to disclose Ms. Engelhorn's address, and so the Plaintiffs filed a Second

Amended Complaint on February 5, 2025, which, with the exception of updating Ms. Engelhorn's address, was identical to the October 30, 2024, Amended Complaint.   The Court otherwise denied WTP's and the Bolog Defendants' various motions, including WTP's Petition to Arbitrate, during the January 27, 2025, hearing.  The Bolog Defendants filed an Answer on February 20, 2025.  The Answer ***demanded a jury trial*** and did not assert that any of the Plaintiffs' claims were subject to arbitration.

On March 24, 2025, the Bolog Defendants (excluding the JAREB Trust) filed a Counterclaim against the Whitewater Trust and Ms. Engelhorn, individually, alleging Defamation (Count I), Indemnification under the terms of the Trust (Count II), Abuse of Process in the filing of the instant action (Count III), and breach of the terms of the Whitewater Trust (Count IV), instead of initiating arbitration with respect to these claims.  Defs.' Exhibit B.  The Counterclaim asserts that Ms. Englehorn and the Whitewater Trust have violated the terms and conditions of the Trust by failing to indemnify the Counter-Plaintiffs and for failing to pay Mr. Bolog trustee commissions under the terms of the trust.  *See* Defs.' Exhibit B, generally.  The Bolog Defendants once again ***demanded a jury trial*** for their counterclaims as well.  *Id*.

Four days later, on March 27, 2025, the Bolog Defendants submitted a letter demanding arbitration and the payment of $500,000.00, which the Plaintiffs refused.  *See* Exhibits B and C. Thereafter, on April 18, 2025, the Bolog Defendants filed the instant Petition seeking to compel arbitration with respect to the following Counts:

- Count X – Constructive Trust (Engelhorn *individually* v. Darnestown)
- Count XI - Constructive Trust (White Pearl, LLC v. Swain Landing LaPlata JC, LLC)
- Count XIII – Petition for Dissolution of Swain Landing (Whitewater and White Pearl v. Bolog, Postal, and Swain Landing)
- Count XIV – Liquidation and appointment of Receiver for Swain Landing (Whitewater and White Pearl v. Bolog, Postal, and Swain Landing)

- Count XVII- Fraudulent Conveyance (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)
- Count XVIII – Count XVII Fraud (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)
- Count XIX- Unjust Enrichment (Whitewater v. Bolog, Science Park, and Tenacity Investments, LLC)

Plaintiffs refer to these claims herein as the "Challenged Claims." The Bolog Defendants do not seek to arbitrate any of the other causes of action asserted in the Second Amended Complaint.

## ARGUMENT

**A. Under Virginia Law, the arbitration provision in the Trust Agreement is not enforceable because the Trust is not a "contract" or "agreement."**

Virginia Law governs the "validity and construction of the agreement…" Defs.' Exhibit A Section 10. The Virginia Supreme Court recently addressed the enforceability of arbitration provisions in trust agreements in *Boyle v. Anderson*, 301 Va. 52, 871 S.E.2d 226 (2022). Specifically, the Court addressed the specific issue of whether the Virginia Uniform Arbitration Act, Code §§ 8.01-581.01 to -.016) ("VUAA") or the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") compels enforcement of an arbitration clause in a trust. *Id*. *Boyle* concerned the administration of a trust that had a clear and unambiguous arbitration provision requiring the submission of "any dispute" that could not be amicably resolved to arbitration. *Id*. at 55. The trustee, Boyle, was also one of the beneficiaries, and the other beneficiaries filed suit to remove Boyle as the trustee and obtain an order forcing her to comply with the terms of the trust. *Id*. In response, Boyle filed a motion to compel arbitration under the VUAA and/or the FAA. *Id*.

The VUAA applies to both a "written agreement to submit any existing controversy to arbitration" and to "a provision in a written contract to submit" a controversy to arbitration." *Id*. at 56. (Quoting VA Code § 8.01-581.01). However, the Court conducted a detailed analysis

6

discussing the fundamental difference between "contracts" and "agreements" on the one hand, and

trusts on the other, and held that a trust is fundamentally different from a contract or an agreement.

> We conclude that a trust does not qualify as a contract or agreement.  Trusts are generally conceived as donative instruments.  The Second Restatement of Trusts, carrying forward the language of the first Restatement of 1935, states that "[t]he creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." Restatement (Second) of Trusts § 197 cmt. B (1959).  The Second Restatement defines a trust as "a fiduciary relationship with respect to property." *Id*. § 2.

> Beyond this longstanding conception of trusts, contracts and trusts differ in how they are formed.  "The existence of the contract depends on actual acceptance of an offer.  It is founded on mutual assent.  A trust is in the nature of a conveyance of an equitable interest, and its formation is not dependent on the beneficiary's knowledge or acquiescence." Amy Morris Hess, et al., Bogert's Law of Trusts and Trustees § 17 (2021). Additionally, trusts differ from contracts in that "[n]o consideration is required for the creation of a trust. . . . In fact, most trusts are created by gratuitous transfer." Restatement (Third) of Trusts, Introductory Note 1 (2003).  Beneficiaries of a trust generally do not provide any consideration to the settlor of the trust.

> Additionally, the duties owed by contracting parties also differ from the fiduciary duties a trustee owes to the beneficiaries of the trust.  *See Rowland v. Kable*, 174 Va. 343, 367, 6 S.E.2d 633 (1940) (noting the fiduciary nature of a trustee's duties); see also Restatement (Third) of Trusts § 2 (2003) ("A trust . . . is a fiduciary relationship with respect to property.")

> …

> Third, ownership of property in a trust differs from ownership of property in a contract.  "One of the major distinguishing characteristics of a trust is divided ownership of property, the trustee usually having legal title and the beneficiary having equitable title." *Id*.  This stands in contrast to the law of contracts, where "this element of division of property interest is entirely lacking." *Id*.  Additionally, "[t]he rights and duties of parties to a contract generally may be freely transferred.  A trustee, on the other hand, cannot assign the trusteeship or delegate the performance of fiduciary duties except as permitted by statute." *Id*.

> When the language of a statute is unambiguous, we are bound by its plain meaning. *Conyers*, 273 Va. at 104. The VUAA does not apply to all arbitration clauses.  It applies to "a provision in a written contract." Code § 8.01-581.01.  We conclude for all these reasons that a trust is not a "contract."

*Boyle*, 301 Va. 52, 56-59 (footnotes omitted).  Finally, the Court likewise concluded that a trust was not a "contract" under the FAA, specifically, 9 U.S.C. § 2.  *Id*. at 59.  As such, under the VUAA, a party to a trust may not be compelled to arbitrate because a trust is not an "agreement" or "contract."

The Bolog Defendants attempt to assert that the Trust document provided consideration and is otherwise enforceable between trustees.  To make this argument, they cite Section 5 K and claim that this section provides for consideration generally, to the trustee.  However, the language of 5 K only provides for compensation if a Trustee carries on a business enterprise for the Trust and the Trustee serves in a special capacity connected to the operation of said business.  *See* Defs.' Exhibit A, §5.K. The specific language provides:

> Section 5.    POWERS OF TRUSTEE, In addition to any powers given to the trustee by statute, common law, or rule of court, the grantor confers upon the trustee, and any successor trustees, **the powers listed below**, which **they may exercise without prior or subsequent approval by any court**…
>
> K. CARRY ON BUSINESS. Without filing reports with any court, to continue, incorporate, enter into, or carry on any business, whether as a stockholder, general or limited partner, sole or joint owner, or otherwise; to invest whatever assets may be needed in the business; to employ agents to operate the business; **to serve in any capacity with the business; to receive reasonable compensation <u>for such services,</u>** in addition to compensation for services as a fiduciary; and to reorganize, liquidate, merge, consolidate, or transfer the business or any part of it.

*See* Defs.' Exhibit A at 5 and 7 (emphasis supplied). However, the Trust Agreement only provides compensation for successor-trustees, not for Mr. Bolog or Ms. Engelhorn.  Section 4.B governs compensation and states as follows:

> B.    COMPENSATION. For services as trustee, each ***<u>successor trustee</u>* shall be entitled to a trustee's fee,** to be paid without court approval, in the annual amount of One Hundred and Twenty-Thousand Dollars ($120,000,00), Such fee shall commence upon the trustees' written acceptance of duties as successor trustee, and shall be paid as follows: 1/12 upon acceptance of the trustees' duties and 1/12 monthly thereafter.

*See* Defs.' Exhibit A at 3 (emphasis supplied).

As such, there is no express contractual obligation in the Trust Agreement generally, nor in Section 5.K for the Trust to compensate its initial trustees, let alone the amount of the compensation, how the compensation is to be calculated, who is responsible for paying said compensation, and when such compensation is to be paid.

The Bolog Defendants' reliance on Va. Code Ann. § 64.2-778 (a)(24) is misplaced. That provision only lists certain acts that a *trustee* may take. Mr. Bolog is not a trustee of the Whitewater Trust. Among those things a *trustee* may do is to "[r]esolve a dispute concerning the interpretation of the trust or its administration by mediation, arbitration, or other procedure for alternative dispute resolution." *Id*. The Bolog Defendants erroneously read this section as though it gives the trustee the authority to compel individuals to engage in arbitration, mediation, or other form of ADR even in the absence of an enforceable contract or agreement to do so. It does not. It merely gives a trustee the power to "resolve a dispute" using the listed mechanisms. The Bolog Defendants forget that all parties to such a dispute may wish to voluntarily resolve such a dispute through arbitration, mediation, or other ADR process, and if so, this section does not prohibit a trustee from doing so.

In the case at bar, the Trust document, while called an agreement, is not actually an agreement or contract under the law of Virginia. There was no consideration for the Trust's property to be held in a fiduciary capacity, and the trustee lacks the ability to assign trusteeship or delegate the performance of their fiduciary duties except as proscribed by Virginia law. Thus, this Honorable Court, applying the substantive law of Virginia, must find that the arbitration term in the trust is not enforceable, as the Circuit Court has done. As a result, the Bolog Defendants' Motion must be denied.

**B.  The Bolog Defendants have waived their right to insist on arbitration.**

The Circuit Court correctly concluded that the Bolog Defendants have waived their right to arbitrate and have otherwise untimely asserted the same. Even assuming *arguendo* a valid agreement to arbitration once existed (it did not), courts must evaluate, under CJP § 3-208, the continued existence of the right to arbitrate. *Gannett Fleming, Inc. v. Corman Constr*., *Inc.*, 243 Md. App. 376, 392 (2019). A party may, by subsequent acts or omissions, waive its right to arbitration. *Id*. One way that a party may waive its right to arbitration is to fail to make a timely demand for arbitration. *Stauffer Constr. Co. v. Bd. of Educ*., 54 Md. App. 658, 666 (1983) ("[B]y failing to make a timely demand, the party had waived his contractual right to resolve the dispute through arbitration.") (discussing *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307 (1975)); see also *Allstate Insurance Co. v. Stinebaugh*, 374 Md. 631, 646 (2003) ("[A]n inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding." (quoting *Town of Chesapeake Beach v. Pessoa Construction Co.*, 330 Md. 744 (1993)). It is the courts, not arbitrators, that evaluate the timeliness of a demand for arbitration. *The Redemptorists v. Coulthard Services, Inc.*, 145 Md. App. 116, 141 (2002) (quoting *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc*., 69 Md. App. 405, 413 (1986)).

A right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead "engage[s] itself substantially in the judicial forum." *The Redemptorists*, 145 Md. App. at 141. Because "a resort to litigation is inconsistent with an intent to arbitrate… one who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue." *Stauffer Construction*, 54 Md. App. at 667. *See, e.g., Cain v. Midland Funding*, 452 Md. 141 (2017) (By filing a collection action in a court, a debt-collection agency waived its right to require arbitration of debtor's subsequent action seeking damages and

related relief based on violations of Maryland consumer-protection laws); *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 113-14 (1983)("A party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement.").

The Defendants, through their actions in this litigation, have waived any potential entitlement to arbitrate the Challenged Claims.  WTP filed a Petition to Compel Arbitration.  Not only did the Bolog Defendants not file their own Petition to Compel Arbitration at that time, they responded to WTP's Petition by asserting that "[n]one of the claims against the Bolog Defendants is subject to arbitration…"  Exhibit 1.  During the hearing, the Bolog Defendants openly opposed WTP's attempts to submit this matter to arbitration.  *See* Exhibit 2 at  31:9-14 ("This case should not go to arbitration.") and 32:13-17 ("But here, there is no arbitration clause relevant to any of the issues that are brought in the complaint by the Plaintiff.")   The Bolog Defendants then answered the Plaintiffs' Complaint and demanded a jury trial.  Exhibit 3.  Nowhere in their Answer do they assert that Plaintiffs' claims are subject to arbitration.  *Id*.  A jury trial is not available in arbitration proceedings, and the unavailability of a jury trial is a key feature of arbitration.  The Bolog Defendants' request for a jury trial is entirely inconsistent with the existence of an agreement to arbitrate.

Finally, the Bolog Defendants filed a Counterclaim (again seeking a jury trial).  The Counterclaim asserted Defamation (Count I) stemming from pre-suit settlement demands in this case; Indemnification (Count II) asserting that the terms and conditions of the Trust required Whitewater to indemnify the Bolog Defendants for expenses incurred in this case; Abuse of Process (Count III) for filing this case; and Breach of Contract (Count IV) for allegedly failing to pay Mr. Bolog compensation under the terms of the Trust for his services as a Trustee while he

was engaging in the tortious conduct set forth in the Second Amended Complaint. Defs.' Exhibit B. Moreover, if such an entitlement to arbitrate existed, it would encompass the Bolog Defendants' Counterclaim because they fall squarely within the scope of the Trust's arbitration provision. Despite this, the Bolog Defendants filed a Counterclaim. *Id*. Only after filing the Counterclaim did the Bolog Defendants first issue a demand to arbitrate the Challenged Claims. *See Cain*, *supra*, 452 Md. 141 (2017) (By filing a collection action in a court, a debt-collection agency waived its right to require arbitration of debtor's subsequent action in as much as they were "related claims"). Here, as in *Cain*, all of the Challenged Claims are "related" to the Counterclaim filed before the Bolog Defendants invoked arbitration. The Bolog Defendants assert that they were forced to assert their Counterclaims in the Circuit Court. However, if the Bolog Defendants believed that their Counterclaims were arbitrable, they certainly could have contacted AAA and initiated arbitration with respect to those claims. Defs.' Exhibit C. Instead, they chose to litigate those claims in the Circuit Court and to ***avail themselves of a jury trial***, all of which are inconsistent with an assertion of a right to arbitrate.

The Bolog Defendants next take the outlandish position that they did not have a copy of the Whitewater Trust until February 20, 2025, and as such, they could not have known it contained an arbitration provision. This assertion is ridiculous because Mr. Bolog himself signed the document and had himself named as co-Trustee. *See* Defs.' Exhibit A. Nonetheless, Mr. Bolog and his counsel admit they had the Whitewater Trust in their possession on February 20, 2025, which is the same day they filed their Answer ***demanding a jury trial***. Exhibit 3. The Bolog Defendants did not raise the existence of an arbitration agreement in their Answer. Exhibit 3. Moreover, February 20, 2025, is more than a month before the Bolog Defendants filed their

Counterclaim on March 24, 2025, wherein they once again **demanded a jury trial**, and attached the Whitewater Trust as "Exhibit B" to the Counterclaim.

Therefore, to the extent that such an entitlement to arbitrate this matter existed under the Trust, the Bolog Defendants have waived that entitlement by their conduct in this action.

### C. Alternatively, Ms. Engelhorn, as the grantor, has terminated the obligation that she arbitrates any of the Challenged Claims under the Trust document.

The Whitewater Trust is a revocable trust.  The relevant section of the Trust states: "The grantor reserves the power, at any time or times during the lifetime of the grantor, by a written instrument delivered to the trustee, to revoke or amend this agreement in whole or in part without the consent of any other person."  Defs.' Exhibit A §8.  Moreover, Virginia law gives the settlor of a revocable trust absolute authority to amend, revoke, or modify a revocable trust.  *See* Va. Code Ann.  § 64.2-751 (A).  "While a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." Va. Code Ann.  § 64.2-752 (A). Ms. Engelhorn is currently the Trustee and settlor/grantor for Whitewater.  "While a trust is revocable, the trustee may follow a direction of the settlor that is contrary to the terms of the trust."  Va. Code Ann. § 64.2-752 (B).

Thus, in the event that the Court does not deny the motion for the reasons set forth in Section A and B, Plaintiff as the settlor/grantor, under the terms of the Trust, and the power she holds under the Virginia Uniform Trust Code, Ms. Engelhorn by filing this action, modified the trust to exclude the claims asserted in this litigation from any obligation to arbitrate.

**D. To the extent that the arbitration provision acts as a prospective limitation of Mr. Bolog's liability for malpractice, it is unenforceable under the strong public policy of the State of Maryland.**

In response to WTP's Petition to Arbitrate, the Plaintiffs filed an Opposition on December 17, 2024, arguing that Maryland's strong public policy, as embodied in MARPC 19-301.8(h)(1), renders unenforceable any agreement whereby a client agrees to arbitrate a *future* claim for malpractice. The Circuit Court for Baltimore City, during the January 27, 2024 hearing in this matter, agreed, and on that basis (and a number of alternative bases), concluded that WTP's arbitration term was unenforceable against the Plaintiffs herein because Maryland's strong public policy prohibits the enforcement agreements to limit prospective malpractice claims by compelling clients to arbitrate said claims. Exhibit 2 at 40:20-42:12. Much of the same argument applies to the Bolog Defendants' Petition to Arbitrate, and Plaintiff adopts and incorporates its Response in Opposition to Defendant Whiteford, Taylor & Preston, LLP's Petition for an Order Compelling Arbitration and Staying Proceedings and Motion to Stay, and Plaintiffs' January 10, 2025, Supplement thereto.

Mr. Bolog and other attorneys at WTP drafted the Whitewater Trust at issue. SAC ¶¶ 30 and 33; *see also* Defs Ex. A ("Whiteford, Taylor & Preston, LLP" appears on the bottom of each page). During the time when the Trust was created, Mr. Bolog and WTP were Ms. Engelhorn's attorneys, and they billed for the creation of the Whitewater Trust. *Id*. Thereafter, Mr. Bolog occupied the dual role of attorney and trustee for Whitewater until November 3, 2022, when Ms. Engelhorn amended and restated the trust and removed Mr. Bolog. SAC ¶5.

Since 1831, Maryland Courts have held "that the *lex loci contractus* controls the nature, construction, and validity of the contract. The exceptions are, where it would be dangerous, **against public policy**, or of immoral tendency, to enforce that construction here." *Trasher v. Everhart*, 3 G. & J. 234, 234 (1831) (emphasis added). *See, also Laboratory Corp. of America v.*

14

*Hood*, 395 Md. 608, 621 (2006) ("We have just as consistently held, however, that the *lex loci contractus* principle is not inflexible and that it 'does not apply to a contract provision which is **against Maryland public policy**.'" (citing *Bethlehem Steel Corp. v. G.C. Zarnas & Co., Inc.*, 304 Md. 183, 188 (1985)).

The Maryland Attorneys' Rules of Professional Conduct ("MARPC") govern the conduct of lawyers licensed to practice law in the State of Maryland and prohibit prospective mandatory arbitration agreements.    MARPC 19-301.8(h) prohibits prospective mandatory arbitration agreements between attorneys and their clients, and states in pertinent part:

> (h) An attorney **shall not**:
>
> > (1) make an agreement **prospectively limiting the attorney's liability to a client for malpractice unless the client is independently represented in making the agreement**; or
> >
> > (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person **is advised in writing** of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice in connection therewith.

Md. Rule 19-301.8(h) (emphasis added).  The comments to the Rule explain that there is a distinction between limiting prospective or future legal malpractice liability and settling existing legal malpractice claims:

> [14] Agreements prospectively limiting an attorney's liability for malpractice ***are prohibited*** unless the client is ***independently represented in making the agreement*** because they are likely to undermine competent and diligent representation.  Also, many clients are unable to evaluate the desirability of making such an agreement before a dispute has arisen, particularly if they are then represented by the attorney seeking the agreement.  This section does not, however, prohibit an attorney from entering into an agreement with the client to arbitrate ***existing*** legal malpractice claims, **provided the client is fully informed of the scope and effect of the agreement**…
>
> [15] Agreements settling a claim or a potential claim for malpractice are not prohibited by this Rule.  Nevertheless, in view of the danger that an attorney will take unfair advantage of an unrepresented client or former client, the attorney must first ***advise such a person in writing*** of the appropriateness of independent

representation in connection with such a settlement.  In addition, the attorney must give the client or former client a reasonable opportunity to find and consult independent attorney.

Md. Rule 19-301.8 Comments (14)-(15).  (Emphasis added.)  Thus, the Rule provides varying levels of protection to clients depending on whether the limitation on liability concerns existing or future malpractice.  The highest protection is afforded when an attorney seeks to prospectively limit their liability to the client, and a Maryland attorney may only do so if the client *is independently represented in making the agreement*.  *Id*.  This is because, as the comments explain, "clients are unable to evaluate the desirability of making such an agreement before a dispute has arisen, particularly if they are then represented by the attorney seeking the agreement."  *Id*.

While the Maryland Supreme Court has not directly addressed whether a mandatory arbitration clause between attorney and client violates the MARPC, however, the Maryland Supreme Court has held that the MARPC is a statement of public policy with the force and effect of law and that a contract that violates a rule can be unenforceable (depending on other circumstances).  *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998), concerned a dispute between two lawyers over the division of a contingency fee.  The overall split did not affect the client's net recovery.  When the attorneys were not able to agree, Post filed a declaratory judgment action against Bregman, alleging that honoring the fee arrangement would violate then-MLRPC 1.5(e) (current MARPC 19-301.5(e)).  *Id*. at 146.  Post countersued for declaratory judgment and breach of contract, and the Circuit Court concluded that a violation of 1.5(e) did not render the agreement unenforceable.  The Supreme Court was called upon to determine whether the MARPC constituted a cognizable and enforceable statement of public policy equivalent in effect to a statute.  *Post,* 349 Md. at 162, 707 A.2d at 815.  The Court held:

MLRPC represents the exercise of that authority, the discharge of that responsibility.  **To the extent, therefore, that the pronouncements of other courts are based on a different view of the function and authority of the Code**

16

> **in their respective States, they are simply not relevant to the Maryland situation.  MLRPC constitutes *a statement of public policy* by the only entity in this State having the Constitutional authority to make such a statement, and it *has the force of law*.**  The mere fact that lawyers may be disciplined -- even disbarred -- for violating those rules attests to the legal significance of the rules.  We thus share the view of the Illinois Supreme Court, expressed in *In re Vrdolyak*, 137 Ill. 2d 407, 560 N.E.2d 840, 845, 148 Ill.  Dec. 243 (Ill. 1990), that "as an exercise of this court's inherent power over the bar and as rules of court, the Code operates with the force of law." See also *Succession of Cloud*, 530 So. 2d 1146, 1150 (La. 1988) ("The standards in the Code of Professional Responsibility which govern the conduct of attorneys have the force and effect of substantive law"); *Citizens Coalition for Tort  Reform, Inc. v. McAlpine*, 810 P.2d 162 (Alaska 1991).

*Post*, 349 Md. at 162-64, 707 A.2d at 816-17 (emphasis added).  The Court then went on to note that "it would indeed be at least anomalous to allow a lawyer to invoke the court's aid in *enforcing an unethical agreement* when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, *would render the lawyer subject to discipline*." *Post*, 349 Md. at 168, 707 A.2d at 818 (emphasis added).  The Court concluded, "MLRPC Rule 1.5(e) does constitute a supervening statement of public policy to which fee-sharing agreements by lawyers are subject, and that the enforcement of Rule 1.5(e) is not limited to disciplinary proceedings.  It may extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e) unenforceable…" *Post*, 349 Md. at 168, 707 A.2d at 818.  The Court did not, however, go so far as to hold that any agreement in violation of 1.5(e) was automatically unenforceable or void *per se* because Rule1.5(e) governs attorney's contracts with *other lawyers*, and the Court articulated a series of other factors to consider before holding a fee-sharing agreement in violation of 1.5(e) unenforceable; which do not have any relevance to the violation of 1.8(h) at issue here.

Also of relevance is MARPC 19-301.8, generally.  Maryland Courts have held that " 'the law makes a presumption against the attorney and in favor of the client.  In such cases, the onus is on the attorney to prove the entire bona fides and fairness of the transaction.' " *Attorney Grievance*

*Commission v. Korotki*, 318 Md. 646, 666, 569 A.2d 1224, 1234 (1990) (quoting *Merryman v. Euler*, 59 Md. 588–90 (1883) ).

> [T]he attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

*Attorney Grievance Commission v. McLaughlin*, 372 Md. 467, 506, 813 A.2d 1145, 1168 (2002) (quoting *Attorney Grievance Commission v. Snyder*, 368 Md. 242, 265–66, 793 A.2d 515, 529 (2002)). "In situations where the client has not been 'advised in writing of the desirability of seeking and [was not] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction,' MLRPC 1.8(a)(2), we presume that the agreement between the attorney and client is not a fair and reasonable one." *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 388, 108 A.3d 394 (2015). An attorney violates Rule 1.8 by failing to advise the client in writing of the desirability of seeking independent legal advice before entering into a settlement agreement with the attorney. *Shapiro*, 441 Md. at 388 ); see also *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 365 (2006) (determining that the attorney violated Rule 1.8 by seeking to have his client sign a release of any malpractice claims against him without advising the client of the desirability of obtaining independent counsel before signing); *AGC v. Young*, 248 A.3d 996, 473 Md. 94 (attorney violated 1.8(a) and (h) by failing to advise client in writing of the desirability of having independent legal counsel before settling an existing legal malpractice claim.).

With respect to the arbitration provision at issue herein, nowhere in the Trust does it state that Ms. Engelhorn was represented by independent counsel with respect to making the Trust. To the contrary, WTP's name is stamped on every page of the document. *See* Defs.' Ex. A. Likewise, as with WTP's arbitration provision, there is no indication that Ms. Engelhorn was instructed *in writing* of the desirability of having independent counsel review the arbitration term, and so they

do not meet the relaxed standard required to settle *existing* malpractice claims, let alone the far higher standard for *future* malpractice claims. Moreover, the arbitration provision at issue lacks any explanation of what arbitration is, the difference between arbitration and litigation, that no jury is available in arbitration proceedings, that she may be waiving a right to punitive damages, that her rights to discovery in arbitration were limited, restrictions on her rights to appeal an arbitrator's award in contrast to her rights in litigation, and any many other important distinctions between arbitration and litigation.

Because the MARPC, including MARPC 19-301.8(h), is a statement of strong public policy, *supra,* the arbitration provision is not enforceable because Engelhorn was not represented by independent counsel in the making of the Trust. The arbitration provision is also unenforceable because the Bolog Defendants have provided no evidence that Engelhorn was "fully informed of the scope and effect of the agreement," which is a requirement under the law of Maryland, *supra.* A prospective agreement to arbitrate malpractice claims is a prospective limitation of a lawyer's liability for malpractice under Maryland law, and such an agreement violates MARPC 19-301.8(h)(1) unless the client is represented by independent counsel "in making the agreement." Ethics Doc. 1990-12 (Exhibit 4). "[I]t would indeed be at least anomalous to allow a lawyer to invoke the court's aid in enforcing an unethical agreement when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, would render the lawyer subject to discipline." *Post,* 349 Md. at 168, 707 A.2d at 818. Therefore, the correct choice of law analysis is for this Court to apply the strong public policy set forth in the MARPC and decline to enforce the arbitration provision of the Trust against Engelhorn.

Alternatively, under Va. Sup. Ct. R. pt. 6, sec. II, ("VRPC") 1.8 (h), the arbitration provision is not enforceable even if Virginia substantive law applies. Virginia's version of 1.8 provides in relevant part:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice, except that a lawyer may make such an agreement with a client of which the lawyer is an employee as long as the client is independently represented in making the agreement.

VRPC 1.8(h). Unlike its Maryland counterpart, VRPC 1.8(h) does not permit prospective agreements to limit an attorney's liability for malpractice, irrespective of whether the client is independently represented in the making of the agreement. Moreover, the Comments to the Rule do not address exceptions or discuss under what circumstances arbitration between attorneys and clients is permitted. Thus, the violation of VRPC 1.8(h) provides an alternative basis for not enforcing the arbitration provision at issue.

The Bolog Defendants assert that Mr. Bolog himself did not draft the Whitewater Trust, and so they argue that this exempts them from the ethical imperatives in the MARPC and VRPC. While Mr. Bolog certainly directed and assisted in the drafting of the Trust, his compatriots at WTP undisputedly drafted the Trust. *See* Defs.' Exhibit A (the bottom of each page is stamped with "Whiteford, Taylor & Preston LLP"). MARPC 1.8(j) provides that "while attorneys are associated in a firm, a prohibition in the foregoing sections (a) through (i) of this Rule that applies ***to any one of them shall apply to all of them***." *Id.* (Emphasis supplied). Likewise, VRPC 1.8(k) provides substantially the same prohibition, "While lawyers are associated in a firm, none of them shall knowingly enter into any transaction or perform any activity when one of them practicing alone would be prohibited from doing so by paragraphs [(a)-(h), and (j)] of this Rule." *Id* (clarification added). Thus, irrespective of whether Mr. Bolog drafted the Whitewater Trust himself, attorneys

associated with him at WTP certainly did so, and thus any such attempt to prospectively limit Mr.

Bolog's liability for malpractice via arbitration, is unenforceable as a matter of law.

### E. The plain language of the arbitration provision does not apply to the claims asserted in this action.

Regarding arbitration, the Trust provides:

> Any controversy between **the trustees**, or **between any other parties to this trust**, **including beneficiaries**, involving the **construction** or **application** of any of the terms, provisions, or conditions of this trust agreement shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

Defs.' Exhibit A Section 9 (emphasis supplied). On their face, none of the Counts that the Bolog

Defendants seek to arbitrate concern the "construction or application" of the terms, provisions, or

conditions of the Trust.

Count X- Constructive Trust alleges that Mr. Bolog utilized $350,000 of Ms. Engelhorn's

personal funds (not Whitewater's funds) to invest in Darnestown. Ms. Engelhorn, not Whitewater,

sued Darnestown, seeking a constructive trust over the funds improperly funneled by Mr. Bolog

to Darnestown Road. Neither Whitewater nor Bolog are parties to Count X, nor does it concern

the construction or application of the terms of the Trust. Darnestown is not a party to the Trust.

Count XI Constructive Trust alleges that Mr. Bolog utilized $585,000.00 of White Pearl,

LLC's funds (not Whitewater's funds) to invest in Swain Landing. In Count XI, White Pearl, LLC

(which is not a party to the Trust) sued Swain Landing, seeking a constructive trust over the funds

improperly invested by Mr. Bolog into Swain Landing. Neither Whitewater nor Bolog are parties

to Count XI, nor does it concern the construction or application of the terms of the Trust. Swain

Landing is not a party to the Trust.

Counts XIII and XIV seek the dissolution and liquidation of Swain Landing. They assert

that the Whitewater Trust was named as a member of Swain Landing. In these Counts, the

Whitewater Trust and White Pearl, LLC sued Mr. Bolog, Michael Postal, and Swain Landing. Through these two Counts, the Whitewater Trust, in its role as an alleged member of Swain Landing, seeks the dissolution, liquidation, and appointment of a receiver for Swain Landing. White Pearl, LLC, seeks the return of its improperly invested $585,000.00.  SAC ¶¶158 and 162. These Counts do not involve the construction or application of the terms of the Trust.   Neither White Pearl, LLC, Mr. Postal, nor Swain Landing are parties to the Trust.  Finally, while Mr. Bolog was once the Trustee of the Whitewater Trust, his role was terminated on November 5, 2021, when Ms. Engelhorn amended and restated the Trust.  SAC ¶5.  Mr. Bolog has disavowed any involvement with Swain Landing whatsoever.  *See* Petition at 6 ("Mr. Bolog had no involvement, in any capacity whatsoever, with the Swain Landing transaction…")

Whitewater asserted Counts XVII (Fraudulent Conveyance), XVIII (Fraud), and XIX (Unjust Enrichment) against Mr. Bolog, Science Park, and Tenacity Investments, LLC.  These Counts asserted that Mr. Bolog, as a member of Science Park and a guarantor indebted to a lender on Science Park's behalf, used Whitewater's funds to pay off his and Science Park's indebtedness. Tenacity Investments, LLC, is alleged to have been one of Mr. Bolog's companies, and it was also a co-guarantor on the indebtedness at issue.  It is alleged that Mr. Bolog failed to disclose his personal interest in the Science Park transaction and failed to remit certain payments from the transaction to the Trust.  Thereafter, when Science Park sold its sole asset, it paid off Whitewater's loan but failed to remit certain additional payments owed.  Neither Tenacity nor Science Park were parties to the Trust.  Count XVII (Fraudulent Conveyance) asserts that Science Park failed to remit payments and failed to pay interest on the Whitewater Trust's loan after liquidating its assets, and it is alleged that Science Park fraudulently conveyed its assets to Tenacity and/or Mr. Bolog without fair consideration, thereby rendering itself insolvent.  SAC ¶¶178-181.   Count XVIII

(Fraud) alleges that Mr. Bolog *concealed* his and Tenacity's interests in the Science Park transaction.  SAC¶¶187-88. Finally, Count XIX (Unjust Enrichment) alleges that Mr. Bolog, Tenacity, and Science Park were unjustly enriched because they failed to remit interest and other payments that they were required to pay Whitewater under the terms of the loan from Whitewater. SAC¶¶194-96.  None of Counts XVII, XVIII, nor XIX involve "the construction or application of any of the terms, provisions, or conditions" of the Trust.  Science Park and Tenacity are not parties to the Trust, and Mr. Bolog is not the Trustee of Whitewater.

Finally, while the JAREB Irrevocable Trust, Dated October 11, 2021, is not a party to the Counterclaim, it is also not a party to any of the Challenged Claims, nor was it a party to the Whitewater Trust at issue. Defs.' Exhibit B.

Accordingly, none of the Challenged Claims involve the "construction or application" of the terms of the Trust, and thus, under the plain language of the Trust, there never was an agreement to arbitrate these claims.  The Bolog Defendants' Petition must be denied.

## CONCLUSION

For the reasons set forth herein, the Circuit Court correctly denied the Bolog Defendants' Petition to Compel Arbitration, and their Motion for Reconsideration must be denied.  The Bolog Defendants have not provided any basis for reconsideration either under Maryland Law, the Federal Rules of Civil Procedure, or the Bankruptcy Rules.  The Trust is governed by Virginia substantive law, and under Virginia law, arbitration terms in trusts are unenforceable because they are not "contracts" or "agreements." This Court, applying Virginia law, should hold the same and deny the Petition.  Alternatively, the Counter-Defendants, by actively litigating this matter, repeatedly disclaiming the existence of an arbitration agreement, and filing a Counterclaim within the scope of the arbitration provision, have waived arbitration.  Next, Ms. Englehorn is the

settlor/grantor with the right to modify and amend the Trust at any time, so by filing this action in the Circuit Court, she has modified the Trust to carve out the claims herein from the arbitration provision.  To the extent that the arbitration provision can be construed as a prospective limitation on Mr. Bolog's liability for malpractice, it is unenforceable under the strong public policy of Maryland as articulated in the MARPC.  Finally, under the plain language of the arbitration term, none of the Challenged Claims involve the "construction or application" of the terms of the Trust and thus are outside the scope of the arbitration provision.

June 24, 2025                                          Respectfully submitted:

                                                       /s/ *Patrick D. Gardiner*
                                                       Wes P. Henderson, Esq. (Fed. Bar #15926)
                                                       Patrick D. Gardiner, Esq. (Fed. Bar #19729)
                                                       HENDERSON LAW, LLC
                                                       2127 Espey Court, Suite 204
                                                       Crofton, Maryland 21114
                                                       T: (410) 721-1979
                                                       F: (410) 721-2258
                                                       wph@hendersonlawllc.com
                                                       patrick@hendersonlawllc.com

                                                       *Attorneys for Plaintiffs*
                                                       *and Counter-Defendants*

## **REQUEST FOR HEARING**

Plaintiffs request a hearing on all matters raised in the Bolog Defendants' Motion for Reconsideration of Order Denying Bolog Defendants' Petition for Order Compelling Arbitration and Staying Proceedings, Plaintiffs' Response in Opposition thereto, and with respect to any paper filed regarding the same.

                                                       /s/ *Patrick D. Gardiner*
                                                       Patrick D. Gardiner, Esq. (Fed. Bar #19729)

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 24th day of June, 2025, a copy of the foregoing was sent

via CM-ECF on the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in-Possession*

AND via first-class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103,
Takoma Park, MD 20912

*Defendant pro se*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC, and Darnestown Road, Inc.*

                                    _____/s/ *PDG*_____
                                    Patrick D. Gardiner, Esq. (Fed. Bar #19729)