UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MARYLAND
**Baltimore Division**

| | | |
|---|---|---|
| *In re:* | * | Case No. 25-184-ELG |
| *Swain Landing LaPlata JC, LLC* | * | U.S. Bankruptcy Court for the District of |
| | * | Columbia |
| **Debtor** | * | |
| *    *    *    *    *    *  | * | |
| *Claudia Engelhorn, et al.* | * | Adv. Proc. No.: 25-00159 |
| | * | U.S. Bankruptcy Court for the District of |
| **Plaintiffs** | * | Maryland |
| | * | |
| *v.* | * | Case No.: C-24-CV-002631 |
| | * | Circuit Court for Baltimore City, |
| *Erik D. Bolog, et al.* | * | Maryland |
| | * | |
| | * | |
| **Defendants** | * | |

**********************************************************************

**MEMORANDUM IN SUPPORT OF MOTION
FOR ABSTENTION AND REMAND**

Plaintiffs/Counter-Defendants, Claudia Engelhorn, Individually, and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended, and White Pearl, LLC (collectively "Movants"), by and through their undersigned counsel, submit this memorandum in support of their Motion for Abstention and Remand (collectively, the "Motion"), and respectfully states as follows:

## INTRODUCTION

In 2024, Plaintiffs filed a twenty-count complaint for damages and other relief based principally on claims of legal malpractice (a tort) and fraud (a tort) in the Circuit Court for Baltimore City, Maryland, designated as Case No.: C-24-cv-24-002631 (the "Civil Action"). A copy of the operative Second Amended Complaint is attached hereto as **Exhibit A**. The Debtor, Swain Landing LaPlata JC, LLC, is a named party in only three of the twenty counts (Counts XI,

XIII and XIV) which seek narrow relief for the imposition of a constructive trust over assets and dissolution of Swain Landing (which is purportedly 50% owned by one of the Movants).

On May 15, 2025, the Debtor, without requisite membership approval and legal authority, filed a petition for relief under subchapter V of the Bankruptcy Code in the District of Columbia (the "DC Bankruptcy Proceeding") designated as Case Number 25-184-ELG (the "DC Bankruptcy Case").[1]

On May 5, 2025, the Debtor, without membership approval or authority, filed this adversary proceeding (Adv. Proc. No.: 25-00159, the "Adversary Proceeding"). The Adversary Proceeding attached a copy of the Complaint and filed a separate notice of removal.[2] On June 10, 2025, this Court removed the Complaint. On June 10, 2025, the Debtor filed a motion to transfer the Adversary Proceeding to the DC Bankruptcy Proceeding (DE 3).[3] Movants have objected to the motion to transfer, which is scheduled for hearing on August 4, 2025. Movants have filed this pleading seeking abstention and remand of the Complaint to the Circuit Court, which is justified for several reasons.

As an initial matter, abstention and remand are appropriate because the Adversary Proceeding was filed and removal requested without the requisite corporate authority. There is no dispute that Movant Engelhorn's Trust, the Whitewater Revocable Trust dated September 30, 2021, as amended ("the Trust"), is alleged by the Debtor to be a 50% member of the Debtor.[4] It is also undisputed that Ms. Engelhorn, as trustee, never authorized the filing of the DC Bankruptcy Proceeding, nor the filing of this Adversary Proceeding. Similarly, this Adversary Proceeding is

---

[1] Movants are or will be filing a motion to dismiss the DC Bankruptcy Case based in part on the absent of legal authority. A copy of that motion, once filed, will be filed as a supplemental exhibit in this Court.

[2] The Adversary Proceeding is untethered to any underlying bankruptcy case in this District.

[3] References to the docket in this Adversary Proceeding are designed as "DE #". References to the docket in the Civil Action are designated "CA #". References to the DC Bankruptcy case are designated as "DC #."

[4] There has also been some indication that White Pearl, LLC, not the Trust, is the member of the debtor. Like the Trust, though, White Pearl never consented to the removal or the commencement of a bankruptcy proceeding.

not connected to the underlying bankruptcy case in this District. As such, there was not appropriate jurisdiction to remove the Complaint and this Court should remand it and, ultimately, dismiss it.[5]

Pursuant to 28 U.S.C. § 1334(c)(2), abstention (mandatory and permissive) is proper for several additional reasons. Similarly, the interests of justice permit the Court to abstain from hearing the Civil Action under 28 U.S.C. § 1334(c)(1), and the Court should remand the case pursuant to 28 U.S.C. § 1452(b). These reasons include the following.

*First,* the Debtor is named in only three of the twenty counts of the Complaint. Moreover, this action is currently stayed against the Debtor by virtue of the automatic stay that arose upon the filing of the DC Bankruptcy Case. By virtue of the automatic stay, there is no reason to retain or transfer an action that arises principally from Maryland common law tort claims against other Defendants. Moreover, Plaintiffs' claims in the Civil Action do not arise under the Bankruptcy Code or in a case under the Bankruptcy Code. Instead, the claims arise under Maryland law, relate to pre-petition misconduct of the Defendants, and exist independently of the DC Bankruptcy Proceeding.

*Second*, abstention and remand are warranted because *the* underlying Civil Litigation is based upon state law claims that are particularly well-suited for adjudication by the Circuit Court. In fact, the Circuit Court has adjudicated several matters in the case, ruling in favor of Movants on all material matters. As such, the removal and the requested transfer by the Debtor appear to be nothing more than thinly veiled and improper forum shopping by the Debtor.

*Third*, in view of the bankruptcy automatic stay and bankruptcy claims process in the DC Bankruptcy Case, removal and/or transfer appear intended to benefit the other defendants who are not co-debtors in bankruptcy.

---

[5] To the extent necessary and appropriate, Movants will formally move for dismissal of this adversary proceeding.

3

*Fourth,* Movants will not consent to entry of a final order by any Bankruptcy Court and are entitled to a jury trial. As such, the matter would need to be transferred at some point, if not initially, to a federal District Court. However, this action would otherwise have been unremovable under 28 U.S.C.S. § 1441 (b)(2), and so there is no basis for federal jurisdiction for a District Court to hear the matter.

For these and other reasons, Movants respectfully request that the court abstain from taking the Complaint and remanding it back to the Circuit Court.

## **BACKGROUND**

This Civil Action arises from the conduct of Erik D. Bolog ("Mr. Bolog"), who was Claudia Engelhorn's former attorney, trustee, confidant, advisor, and friend. It is alleged that while Mr. Bolog was employed by Whiteford, Taylor & Preston, LLP ("WTP") and acting within the course and scope of his employment with WTP engaged in multiple instances of intentional misconduct wherein he used the Plaintiffs' assets to enrich himself, his business ventures, and enrich his friends, and billed the Plaintiffs for his and other WTP employees' time in engaging in said misconduct. Once Mr. Bolog's misconduct was highlighted to WTP's management, they conducted an investigation into Mr. Bolog's actions, uncovered misconduct, and terminated him.

It is alleged that Mr. Bolog misconduct can be delineated into subcategories: (1) a Fraudulent $10 Million "Gift"[6] to the JAREB Irrevocable Trust[7]; (2) embezzlement to save Mr. Bolog and Michael Postal ("Mr. Postal")'s investment in the Science Park Property; (3) fraud and embezzlement into Mr. Bolog's company, Darnestown Road, Inc.; and (4) embezzlement and fraud related to the debtor, Swain Landing LaPlata JC, LLC.

---

[6] Throughout this paper Movants refer to the $10 Million transfer as a "Gift" as a mere shorthand, and they do not concede that the transfer was in fact a valid gift.
[7] Mr. Bolog was the primary beneficiary of the JAREB Trust.

4

It is alleged that Defendants Bolog and Postal are long-term friends and business associates. SAC ₱68[8]. Ms. Engelhorn sold a property and deposited the funds into a bank account belonging to White Pearl, LLC, an entity that Ms. Engelhorn owned and controlled.  SAC ₱69. That Mr. Bolog and Mr. Postal arranged for White Pearl's bank to wire $585,000 into an account belonging to Swain Landing.  SAC ₱70.  Bolog neither obtained anything of value in return for White Pearl, LLC, such as stock or debt security, nor any instrument securing White Pearl, LLC's right to repayment in exchange for this $585,000 payment to Defendant Swain Landing, and he covered up, concealed, and failed to disclose his interest in this company and/or his connection to its members before authorizing the transaction, contrary to his ethical and fiduciary duties.  SAC ₱74.

As a result of this alleged conduct, the Plaintiffs have asserted various causes of action against the Defendants.  However, with respect to Debtor Swain Landing, Plaintiff White Pearl, LLC has asserted the following causes of action: Constructive Trust for $585,000 (Count XI); Dissolution of Swain Landing per Corps. & Assoc. 4A-903, et seq. (Count XIII); and Equitable Dissolution of Swain Landing under common law (Count XIV). These three causes of action will be referred to collectively as the "Swain Claims."

The Second Amended Complaint also alleges claims against other defendants, where said defendants' conduct in relation to the Swain Landing embezzlement forms the basis of a cause of action, to which Swain Landing itself is not a party.  White Pearl asserted Fraud against Bolog and WTP (as his employer) for the Swain Landing embezzlement (Count V), White Pearl alleges breach of fiduciary duty against Bolog and WTP (as his employer) for the Swain Landing

---

[8] As used herein "SAC" refers to the Second Amended Complaint attached hereto as Exhibit A.

embezzlement (Count VII)[9], White Pearl asserted a claim for aiding and abetting against Mr. Postal for his role in the Swain Landing embezzlement (Count XII), finally, Plaintiffs asserted a catch all aiding and abetting claim against WTP with respect to all of Mr. Bolog's alleged breaches of fiduciary duty (Count XX). These will be referred to collectively as the "Swain Adjacent Claims."

Finally, the remaining thirteen causes of action in the Second Amended Complaint have no connection to Swain Landing whatsoever, these are: Count I (Fraud-JAREB); Count II (Negligent Hiring/Retention); Count III (Fraud-Science Park); Count IV (Fraud-Darnestown); Count VI (Legal Malpractice/Negligence); Count VIII (Rescission of Gift-JAREB); Count IX (Constructive Trust-JAREB); Count X (Constructive Trust - Darnestown); Count XV (Declaratory Judgment – JAREB); Count XVI (Unjust Enrichment – JAREB); Count XVII (Fraudulent Conveyance -Science Park); Count XVIII (Fraud-Science Park); and Count XIX (Unjust Enrichment- Science Park). These will be referred to collectively as the "Unrelated Claims."

Thereafter, on March 24, 2025, Defendants Bolog, Science Park Associates, LLC, and Darnestown Road, Inc., filed Counterclaims against Ms. Engelhorn and the Whitewater Trust. **Exhibit B.** The Counter-Plaintiffs assert claims for Defamation, Abuse of Process, Indemnification, and Breach of Contract. *See* Counterclaim, generally. Creditor White Pearl, LLC, is not a party to any of the Counterclaims. *Id.* Debtor Swain Landing is likewise not a party to the Counterclaims. *Id.* Counter-Plaintiffs specifically assert that they "had no involvement with the Swain Landing investment…" *See* Exhibit B ⁋51. These will be referred to collectively as the "Counterclaims."

The Unrelated Claims, the Swain Adjacent Claims, and the Counterclaims will be referred to collectively as the "Non-Swain Claims."

---

[9] This is a general claim covering all acts of misconduct, including the Swain Landing transaction, but Swain Landing is not a party thereto, nor is it alleged to have any liability on this cause of action.

6

## ARGUMENT

As set forth more fully below, this Honorable Court should remand all claims, or at least the Non-Swain Claims, back to the State Court.  First, the Non-Swain Claims are non-core proceedings under 28 U.S.C. § 157 with a tenuous, if any, relationship to the Chapter 11 Subchapter V case.  Second, the Court is required to abstain from hearing and determining the Non-Swain Claims because all of the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) are satisfied. Third, pursuant to 28 U.S.C. § 1334(c)(1), the Court should abstain from hearing and determining all of the claims, and the Court should remand the proceeding to the State Court under 28 U.S.C. § 1452(b).

### I.      The Civil Action Is A Non-Core Proceeding.

This Honorable Court may only hear and determine the Non-Swain Claims if subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334.  *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 839 (4th Cir. 2007).  A bankruptcy court derives its jurisdiction from the jurisdiction of the district court[10] and may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11... and may enter appropriate orders and judgments" in such cases and proceedings. 28 U.S.C. § 157(b) (emphasis added); *Valley Historic L.P.*, 486 F.3d at 835. "Core proceedings" are proceedings that either *arise under* the Bankruptcy Code or *arise in* a case under the Bankruptcy Code. *Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter Hayden Co.)*, 304 B.R. 725, 730 n.3 (Bankr. D. Md. 2004); 1 COLLIER ON BANKRUPTCY ¶ 3.02[2] at 3-32 (15th ed. 2008).

### A.      The Non-Swain Claims do not arise under Title 11.

---

[10] Pursuant to 28 U.S.C. § 1334, district courts have original jurisdiction with respect to (i) cases under the Bankruptcy Code, (ii) civil proceedings arising under the Bankruptcy Code, (iii) civil proceedings arising in cases under the Bankruptcy Code and (iv) civil proceedings related to cases under the Bankruptcy Code.

A proceeding does not arise under the Bankruptcy Code for jurisdictional purposes unless it involves a cause of action "created or determined" by a provision of the Bankruptcy Code. *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir. 1987); see also *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995) ("This means that 'arising under' jurisdiction in bankruptcy extends to 'only those cases in which a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law.'").

None of the Claims were created by the Bankruptcy Code. Rather, the Non-Debtor Parties seek judgments against each other for allegedly improper behavior, breaches of duty, *etc*. The Claims arise solely under State law and will be determined solely by application of State law. *See In re Merry-Go-Round Enterprises, Inc.*, 222 B.R. 254, 258 (D. Md. 1998) (affirming remand of legal malpractice action, finding that the state law questions regarding legal malpractice and fraud were not "mundane"). Moreover, neither the Non-Swain Claims nor the defenses thereto present any questions of federal bankruptcy law and thus do not arise under the Bankruptcy Code.

### B.    The Non-Swain Claims do not arise in a case under Title 11.

A proceeding involving a cause of action that would exist irrespective of whether a bankruptcy petition was filed does not arise in a case under the Bankruptcy Code. *Valley Historic L.P.*, 486 F.3d at 836. The Debtor has not satisfied the Fourth Circuit requirements for jurisdiction over proceedings arising in a case under the Bankruptcy Code. *See Valley Historic L.P.*, 486 F.3d at 836.

Indeed, Plaintiffs filed their various claims, including the Swain Claims, before Swain Landing filed for bankruptcy, and so they would exist regardless of whether the Debtor subsequently filed a bankruptcy petition. Therefore, none of the Claims arose in a case under the

Bankruptcy Code. *See id.* ("It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's 'arising in' jurisdiction."). Additionally, the Non-Swain Claims do not involve the allowance or disallowance of claims against the Debtor per 28 U.S.C. § 157 (b)(2)(B).

## II.    28 U.S.C. § 1334(c)(2) Requires This Honorable Court To Abstain From Hearing the non-Swain Claims

This Honorable Court must abstain from hearing a proceeding that (i) is based on state law causes of action, (ii) relates to a bankruptcy case but is not a core proceeding, (iii) could not have been commenced in federal court absent the debtor's bankruptcy filing and (iv) was commenced and can be timely adjudicated in a state court of appropriate jurisdiction. See 28 U.S.C. § 1334(c)(2); *In re Porter-Hayden Co.*, 304 B.R. at 735.

The Non-Swain Claims are based solely on state law causes of action and, at best, only the Swain Adjacent Claims, "relate to" the DC Bankruptcy Proceeding, but, as set forth above, they are not core proceedings. In the absence of the DC Bankruptcy Proceeding, the entire Civil Action was not removable under 28 U.S.C.S. § 1441 (b)(2) because Plaintiffs filed the Civil Action in Maryland, where most of the Defendants are residents. Finally, the Non-Swain Claims, if remanded, can be timely adjudicated in the State Court. This Court has held that there is a "presumption that the state courts operate timely and efficiently and the party seeking abstention is not required to affirmatively prove this facet of the abstention test in the absence of evidence from the opposing party." *Power Plant Entm't Casino Resort Indiana, LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012).

Each requirement of 28 U.S.C. §1334(c)(2) is satisfied. This Court must abstain from hearing and determining the Civil Action.

III.    **Under 28 U.S.C. § 1334(c)(1), the Court Should Abstain From Hearing all Claims, but at a minimum the Non-Swain Claims, and Remand This Matter to the State Court**

In the unlikely event this Honorable Court determines that the state law Non-Swain Claims constitute a "core" proceeding under 28 U.S.C. § 157(b), and do not fall under the mandatory abstention provision contained in 28 U.S.C. § 1334(c)(2), the Court should abstain from hearing the entirety Civil Action and remand the case back to the State Court under 28 U.S.C. § 1452(b).

"When deciding to remand, courts often rely on 28 U.S.C. § 1452(b) (the provision for remanding an action removed under 1452(a)) in conjunction with the permissive abstention principle of 28 U.S.C. § 1334(c)(1)." *Patterson v. Morris*, 337 B.R. 82, 96 (E.D. La. 2006), *aff'd in part, appeal dismissed in part sub nom. Patterson v. Dean Morris, L.L.P.*, 448 F.3d 736 (5th Cir. 2006) (citation omitted); *see also* Collier, supra, at ¶ 3.07. Section 1452(b) provides, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on **any equitable ground**." 28 U.S.C. § 1452(b) (emphasis added). Similarly, § 1334(c)(1) provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

"Thus, this Court may abstain from hearing a core proceeding when to do so is in the interest of justice, or in the interest of comity with state courts or respect for state law." *Patterson*, 337 B.R. at 95-96. Courts generally group these provisions together "'because the considerations underlying discretionary abstention and remand are the same,' and because § 1452(b) (remand) and § 1334(c) (discretionary abstention) favor comity and the resolution of state law questions by state courts." *Id*. at 96 (quoting *Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 494 (E.D. La. 1990); see also Collier, supra, at ¶ 3.07[5].

A.      **Permissive Abstention**

To determine whether permissive abstention is appropriate, the Court considers the following factors:

 i.  efficiency in the administration of the debtor's estate;

 ii.  the extent to which state law issues predominate over bankruptcy issues;

 iii.  whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

 iv.  the presence of a related proceeding commenced in state court;

 v.  the existence of a jurisdictional basis for federal jurisdiction apart from debtor's bankruptcy filing;

 vi.  the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

 vii.  the substance rather than form of an asserted "core" proceeding;

 viii.  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

 ix.  the burden of the bankruptcy court's docket;

 x.  the likelihood that the commencement of the proceeding in federal court involves forum-shopping by one of the parties;

 xi.  the existence of a right to jury trial; and

 xii.  whether non-debtor parties are involved in the proceeding.

*In re Porter-Hayden Co.*, 304 B.R. at 735 (citing *MacLeod v. Dalkon Shield Claimants Trust*, 967 F. Supp. 856, 858 (D. Md. 1997)). These factors strongly favor this Court's abstention from hearing and determining the Civil Action.

 *1. Efficiency in the administration of the debtor's estate.*

The Non-Swain Claims asserted against the Defendants in the Civil Action have nothing to do with the administration of the Debtor's estate and therefore will not affect the efficiency of

the administration of that estate.  If the non-Debtor Defendants are found liable, they will each be required to satisfy a judgment in favor of the Plaintiffs.  Additionally, the Swain Claims in the Civil Action are stayed, and so abstention will not impair the administration of the estate. This factor supports abstention by this Court.

   2.    *The extent to which state law issues predominate over bankruptcy issues.*

This factor heavily militates in favor of the Court abstaining from hearing the claims asserted in the Civil Action. There are no bankruptcy issues in the Civil Action whatsoever. The state common law claims of negligence, fraud, constructive trust, etc., are the centerpiece of this litigation. Moreover, the Bolog Defendants have filed an extensive motion for reconsideration of the Circuit Court's prior denial of their Petition to Compel Arbitration, and Counter-Defendants have a pending Motion to Dismiss the Counterclaim, all of which involve the application of complex Maryland common law (and in some instances Virginia law), the Maryland Rules, and the law of the case.  State courts have "particular expertise" to decide the state law questions that predominate in the Civil Action. *See Patterson v. Morris*, 337 B.R. 82,  98 (E.D. La. 2006).  This factor supports abstention by this Court.

   3.    *Whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court.*

The Civil Action involves complex questions of State law, strong Maryland public policy as embodied in the Maryland Attorneys' Rules of Professional Conduct, and their impact on the validity of the alleged $10 million "Gift," as well as State common law malpractice, fraud, respondeat superior, *etc*. The Circuit Court would be in the best position to understand the facts

and proceedings at issue in the Civil Action that they, and their judges, regularly adjudicate.[11]  As to liability issues in this matter, they will invoke complex questions that arise within the unique context of a relationship of trust and confidence, *i.e.*, the attorney-client relationship and trustee-beneficiary relationship. *See Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 100 (2000). State law and state statutes are best interpreted by state courts.  While non-Debtor Defendants have argued at times that the law of other jurisdictions, such as the District of Columbia, controls various issues in the case, none of them have as yet asserted that an issue of Federal or Bankruptcy law is the basis of any claim or defense. *In re Railworks Corp*., 345 B.R. 529, 541 (Bankr. D. Md. 2006) ("While this Court could endeavor to decipher the finer points of California law based on the claims asserted, the California Superior Court is in a better position to adjudicate these State law claims.")  This factor weighs heavily in favor of abstention.

    *4.*    *The presence of a related proceeding commenced in state court.*

There is currently no State Court action pending because the Defendants removed to this Court all state law claims asserted against them by the Plaintiffs.

This factor weighs neither for nor against abstention.

    *5.*    *The existence of a jurisdictional basis for federal jurisdiction apart from the debtor's bankruptcy filing.*

There is no conceivable basis for federal jurisdiction of the Civil Action other than the Debtor's filing of the DC Bankruptcy Proceeding and the Debtor's mistaken assertion that the entirety of the Civil Action is "related to" Swain Landing's bankruptcy proceeding. The state law claims asserted by Plaintiffs against the Defendants do not invoke federal question jurisdiction

---

[11] This is not to say that the Bankruptcy Court could not understand or come to understand these issues. But the Bankruptcy Court faces these issues in far fewer frequency than the Circuit Court such that adjudication in the Circuit Court would be far more efficient.

under 28 U.S.C. § 1331.  Moreover, the majority of the Defendants are either Maryland residents, business entities organized under Maryland law, and/or that have their principal place of business in Maryland, or they are Maryland Trusts.  In other words, some of the Defendants (including the Debtor) are Maryland citizens, and the Plaintiffs sued them in state court in Maryland. "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C.S. § 1441 (b)(2) (clarification supplied).

This factor heavily favors abstention.

6.   *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.*

At best, the Civil Action is remotely related to the Chapter 11 Case. The only relation between the Non-Swain Claims and the DC Bankruptcy Proceeding is that the SAC alleges that Mr. Bolog perpetrated a fraud when he diverted funds from White Pearl, LLC to the Debtor. The Non-Swain Claims will not result in a judgment against the Estate or impact the bankruptcy proceeding in any way.  The Swain Claims, which seek the imposition of a constructive trust over the funds Mr. Bolog improperly syphoned to the Debtor, and the dissolution and appointment of a receiver to liquidate the Debtor to return said funds.   According to its schedules, the Debtor presently has no assets.

This factor favors abstention.

7.   *The substance rather than form of an asserted "core" proceeding.*

As set forth in Section I above, the Non-Swain Claims do not form a core proceeding. Courts have held that "if a claim is based on state law and the claim could arise outside the context of a bankruptcy proceeding, then it is not a core proceeding." *See Sago v. Wal- mart Stores, Inc.*,

280 F. Supp. 2d 578, 587 (S.D. Miss. 2003) (citing *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999)). Plaintiffs have asserted Non-Swain Claims against the Defendants, which "are primarily grounded in Maryland law" and involve no questions of bankruptcy law whatsoever. *See In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257-58 (D. Md. 1998) (affirming remand of legal malpractice action to state court). In substance and form, the Plaintiffs' claims are state law claims that belong in the State Court. With the exception of the fact that the Swain Claims are assessed against the Debtor, they likewise would be non-core claims, arising solely under Maryland law. However, the Swain Claims have been stayed.

This factor favors abstention.

8.   *The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court.*

The Swain Claims (which are stayed) can easily be severed from the Non-Swain Claims. The State Court can and should decide whether the non-Debtor Defendants are liable for the Non-Swain Claims. *See In re Merry-Go-Round Enter.*, 222 B.R. 254 at 259 ("Significant issues are raised which Judge Derby could properly find can be more appropriately resolved by state courts who have day-to-day familiarity with Maryland tort law and who are experienced in adjudicating common law claims.").

This factor favors abstention.

9.   *The burden of the bankruptcy court's docket.*

The Court should devote its time to cases that have genuine and articulable bankruptcy issues. The Civil Action is not one of them. The Civil Action was set on the Standard Complex track in the State Court. Indeed, the Court issued an amended scheduling order in the Civil Action with a trial start date of February 12, 2026. Exhibit C.

This factor favors abstention.

15

10.     _The likelihood that the commencement of the proceeding in federal court involves forum-shopping by one of the parties._

There is a substantial likelihood that forum shopping was involved in the removal of the Civil Action to this Court. The Debtor, an assetless Maryland entity, which does not seem to have engaged in any business whatsoever in years, initiated the DC Bankruptcy Proceeding and removed the Civil Action solely to delay the Plaintiffs from presenting their claims against the Debtor's principal and his friends.  Debtor's managing member, Michael Postal, is a co-defendant and long-term friend of Mr. Bolog, and it appears that these bankruptcy proceedings are simply an effort to create a procedural quagmire and delay Plaintiffs' presentation of this matter to a Baltimore City jury.  In fact, Messrs. Bolog and Postal were previously sued as co-defendants in the matter of _Law Offices of William Johnson v. M Y New Hampshire, LLC et al._, Case No. 09-10047-SMT in the United States Bankruptcy Court for the District of Columbia approximately 16 years ago.

This factor heavily favors abstention.

11.     _The existence of a right to jury trial._

Plaintiffs requested a jury trial, and the Counter-Plaintiffs requested a jury trial on their Counterclaims.[12]  A right to trial by jury exists in this case and, as a result, favors abstention. "[W]here such [a] right exists, whether waived or not, it is indicative that, in the absence of federal issues which might give rise to a jury trial, a state law claim lies at the heart of the action." _See_

---

[12] If any of the Counterclaims are not dismissed following the consideration of Plaintiffs/Counter-Defendants' Motion to Dismiss the Counterclaim, then the Counter-Defendants will demand a jury trial with respect to the Counterclaim as well.

*Patterson*, 337 B.R. at 99 (quoting *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987)). While not all of the Plaintiffs' claims would be subject to a jury trial, *i.e.*, declaratory judgment, the overwhelming majority are.

The right to a trial by jury favors abstention.

*12.    Whether non-debtor parties are involved in the proceeding.*

The Civil Action consists overwhelmingly of Non-Swain Claims by and between non-Debtor parties.

This factor supports abstention.

This Honorable Court "has no hesitation granting motions for abstention in appropriate cases. . . " *In re Sasscer*, 06-13476PM, 2007 WL 3071432, at *5 (Bankr. D. Md. Oct. 17, 2007). Based on the above analysis and in light of the overwhelming presence of state law questions, abstention is appropriate in this case.

**B.    Equitable Remand**

As stated above, "virtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b*)." In re Merry-Go- Round Enterprises, Inc.*, 222 B.R. at 256.  This does not mean, however, that the two doctrines have merged. *Id*. at 257.  In fact, a court's discretion to remand a case is even broader than its discretion to abstain, as a court may remand a case on any "appropriate ground." *Id*. (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 133 (1995)). Moreover, remand of a case is the mechanism for implementing abstention. *Id*.

The Court considers the following factors when determining whether equitable remand is appropriate:

17

i.      the effect on the efficient administration of the bankruptcy estate;

ii.     the extent to which issues of state law predominate;

iii.    the difficulty or unsettled nature of applicable state law;

iv.     comity;

v.      the degree of relatedness or remoteness to the proceeding in the main bankruptcy;

vi.     the existence of the right to a jury trial; and

vii.    prejudice to the involuntarily removed defendants.

*In re Railworks Corp.*, 345 B.R. 529, at 540.

Factors one, two, three, five, and six were fully addressed in the previous sections and favor remand of the entire Civil Action to the State Court, but at a minimum, they favor remand of the Non-Swain Claims.

Factor four (comity) strongly favors remand and is at the heart of both permissive abstention and equitable remand. Comity is the principle under which the federal courts (as a courtesy) should defer to state courts when such deference is appropriate. *See Patterson*, 337 B.R. at 99. Here, deference to the State Court is entirely appropriate given that, but for the filing of the DC Bankruptcy Proceeding, the Civil Action would not have been subject to removal. Moreover, the Civil Action (and the defenses articulated thus far) and the Non-Swain Claims involve only questions of state law. As a result, in the interest of comity, this Court should "extend the courtesy to the state court of interpreting its own laws." *Id*.

Finally, factor seven (prejudice to the removed parties) favors remand. Plaintiffs are prejudiced by the fact that removal of the Civil Action will deprive Plaintiffs of their chosen forum – the State Court.  Moreover, the Plaintiffs will suffer prejudice in the form of needless delay and added expense, as the Debtor and the Bolog Defendants seek to move this matter from court to

court while they shop for a sympathetic forum. In contrast, the Defendants will face no prejudice if remand is granted.

For all the reasons stated in Section III. A, above in support of permissive abstention and for the reasons articulated here, equitable remand is appropriate.

## **CONCLUSION**

The Plaintiffs do not consent to the entry of a final order or judgment by the Bankruptcy Court. This Honorable Court must remand the Civil Action to the State Court, or at a minimum, remand the Non-Swain Claims. The Non-Swain Claims are non-core proceedings and only involve issues of State law, which the State Court is best suited to resolve. The Civil Action could not possibly have found its way to this Court for any reason other than that one Defendant (which had not participated in the Civil Action and which had not engaged in business in years) filed a Chapter 11 Subchapter V proceeding in the Bankruptcy Court for the District of Columbia. This tenuous connection to the Chapter 11 Case does not support this Court's jurisdiction of the Non-Swain Claims, and moreover, the Swain Claims have been stayed pending the resolution of the Bankruptcy Proceeding. Even if this Court determines that it has jurisdiction to hear and determine the stayed Swain Claims, this Honorable Court should exercise permissive abstention and/or equitable remand and return the entire Civil Action to the State Court. At an absolute minimum, the Non-Swain Claims justify permissive abstention and equitable remand.

July 10, 2025

Respectfully submitted:

/s/ Patrick D. Gardiner

Wes P. Henderson, Esq. (Fed. Bar #15926)
Patrick D. Gardiner, Esq. (Fed. Bar #19729)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs and Counter-Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2025, a copy of the foregoing was sent

via CM-ECF on the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

*Counsel for Swain Landing LaPlata JC, LLC, Debtor-in Possession*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,*
*and as Trustee of The JAREB Irrevocable Trust*
*Agreement dated October 11, 2021,*
*Science Park Associates, LLC, and Darnestown Road, Inc*

AND via first-class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103,
Takoma Park, MD 20912

*Defendant pro se*

/s/ Patrick D. Gardiner
Patrick D. Gardiner, Esq. (Fed. Bar #19729)