**EXHIBIT C**

# In The Matter Of:

*Claudia Engelhorn, et al. v.*
*Erik D. Bolog, et al.*

---

*Sarah K. Mayo*
*June 2, 2025*
*Video Deposition*

---

*Beacon Court Reporting Services*

*100 Independence Drive, Suite 7*

*Hyannis, Massachusetts 02601*

*(774) 678-4255*

*www.beaconcourtreporting.com*



Original File 2025-0602_Mayo.txt

**Min-U-Script®**

Sarah K. Mayo - June 2, 2025
Video Deposition

```
                                      Volume:
                                      Pages:  1-99
                                      Exhibits:  1-5


              IN THE CIRCUIT COURT FOR

              BALTIMORE CITY, MARYLAND

***************************x
CLAUDIA ENGELHORN, ET AL.,

        Plaintiffs,

v.                            No. C-24-CV-24-002631

ERIK D. BOLOG, ET AL.,

        Defendants.
***************************x


        VIDEOTAPED DEPOSITION OF SARAH K. MAYO

      taken at Beacon Court Reporting Services

           100 Independence Drive, Suite 7

              Hyannis, Massachusetts

           June 3, 2025, 10:01 a.m.




Stenographic Reporter:
Janet L. Wynne, CSR No. 131793
Registered Professional Reporter
Massachusetts Notary Public


           Beacon Court Reporting Services
           100 Independence Drive, Suite 7
            Hyannis, Massachusetts 02601
            www.beaconcourtreporting.com
```

BEACON COURT REPORTING SERVICES
(774) 678-4255

APPEARANCES:

FOR THE PLAINTIFF:
    Wes P. Henderson, Esq. (via remote)
    Henderson Law, LLC
    2127 Espey Court, Suite 204
    Crofton, Maryland 21114
    wph@hendersolawllc.com

FOR THE DEFENDANTS ERIK D. BOLOG; ERIK D. BOLOG,
TRUSTEE; JAREB IRREVOCABLE TRUST AGREEMENT;
SCIENCE PARK ASSOCIATES, LLC; DARNESTOWN ROAD,
INC.
    Douglas Gansler, Esq.
    Cadwalader, Wickersham & Taft LLP
    1919 Pennsylvania Avenue NW
    Washington, DC 20006
    douglas.gansler@ccwt.com

FOR THE DEFENDANT WHITEFORD, TAYLOR & PRESTON LLP:
    John J. Connolly, Esq.
    Kirk MacKinnon Morrow, Esq. (via remote)
    William J. Murphy, Esq. (via remote)
    Zuckerman Spaeder LLP
    100 East Pratt Street, Suite 2400
    Baltimore, MD 21202-1031
    jconnolly@zuckerman.com
    KMackinnonMorrow@zuckerman.com
    Jmurphy@zuckerman.com


Also Present:

    Bob Giannini, Videographer
    Budd Legal Video

Sarah K. Mayo - June 2, 2025                              3
Video Deposition

I N D E X

Witness:                                              Page

SARAH K. MAYO

    Examination by Mr. Connolly................    5

    Examination by Mr. Gansler.................   54
    .........................................   95

    Examination by Mr. Henderson..............   77

EXHIBITS

Number        Description                          Page

Exhibit 1     Subpoena.........................    4

Exhibit 2     JAREB Irrevocable Trust
              Agreement dated October 11, 2021.    4

Exhibit 3     Notice of Gift...................    4

Exhibit 4     Notary Public Application........    4

Exhibit 5     Transfer Instructions...........    4

(Original Exhibits retained by Attorney Connolly.)

BEACON COURT REPORTING SERVICES
(774) 678-4255

```
 1              P R O C E E D I N G S

 2              (Exhibits 1 through 5 pre-marked for

 3               identification.)

 4              THE VIDEOGRAPHER:   Good morning.  We

 5   are on the record.  This is the videographer

 6   speaking, Bob Giannini.  I'm with the court

 7   reporter, Janet Wynne, with Beacon Court

 8   Reporting.  Today's date is June 2, 2025, and the

 9   time is 10:02 a.m.

10              We are here at Beacon Court Reporting,

11   located in Hyannis, Massachusetts, to take the

12   video deposition of Sara Mayo in the matter of

13   "Claudia Engelhorn, et al., versus Erik Bolog,

14   et al."

15              Will counsel please introduce

16   themselves for the record.

17              MR. CONNOLLY:   John Connolly for

18   Defendant Whiteford, Taylor & Preston LLP.

19              MR. GANSLER:   Douglas Gansler for

20   Defendant Erik Bolog and other associate entities.

21              MR. HENDERSON:   Wes Henderson, counsel

22   for the plaintiffs.

23              THE VIDEOGRAPHER:   Okay.  Thank you.

24              Will the court reporter please swear in
```

```
 1   the witness.
 2                     SARAH K. MAYO,
 3   a witness called for examination by counsel for
 4   the Defendant Whiteford, Taylor & Preston, LLP,
 5   having been satisfactorily identified and duly
 6   sworn by the Notary Public, deposes and says as
 7   follows:
 8                     EXAMINATION
 9   BY MR. CONNOLLY:
10        Q.   Good morning, Ms. Mayo.  My name is
11   John Connolly.  As I mentioned, I represent a
12   defendant in this case, Whiteford, Taylor &
13   Presto.  Thank you for coming here today.
14             My first question is:  You are here
15   today because we sent you a subpoena; is that
16   correct?
17        A.   Mm-hmm.
18        Q.   All right.  So I want to show you a
19   document to make sure that we're on the same page
20   as to the subpoena you received.
21             This has been pre-marked as Mayo
22   Exhibit -- Deposition Number 1.  I ask you to take
23   a quick look at that and see if that's the papers
24   that you received from our office through a
```

Sarah K. Mayo - June 2, 2025                    31
Video Deposition

```
 1          A.   Mm-hmm.

 2               MR. HENDERSON:   Objection --

 3          A.   Yes.

 4               MR. HENDERSON:   -- to form and

 5  substance.

 6          Q.   You have to answer --

 7          A.   Yes.

 8          Q.   Okay.  Did she seem intoxicated?

 9               MR. HENDERSON:   Objection.

10          A.   No.

11          Q.   Did she seem like she was in pain or on

12  pain medications?

13          A.   No.

14               MR. HENDERSON:   Objection.

15          Q.   Did she seem confused?

16          A.   No.

17               MR. HENDERSON:   Objection.

18          Q.   Did Mr. Bolog speak to her when you

19  were in the room?

20          A.   He would give her the document and

21  explain what it was.  And then, before I would

22  sign it or stamp it, I just asked her if she

23  understood the documents and was signing them of

24  her own free will, because that's what I ask all
```

1   the people that sign something, like, make sure

2   they're not doing it against their will.

3          Q.  Okay.  And that's a requirement of your

4   function as a notary; is that fair?

5          A.  Yeah.

6              MR. HENDERSON:  Objection.

7          Q.  So you say that Mr. Bolog first

8   explained the document to her?

9          A.  Yes.

10         Q.  All right.  Do you recall what he said?

11         A.  I wasn't paying attention.  I don't.

12         Q.  Do you recall that Mr. Bolog passed her

13  a document and said something like, "This document

14  is a..." -- "X"?

15         A.  Yes.

16         Q.  All right.

17             MR. HENDERSON:  Objection.

18         Q.  And did she ask any questions of

19  Mr. Bolog?

20         A.  No.  It seemed like she trusted him.

21         Q.  All right.  Do you recall seeing her

22  follow along reading the document?

23         A.  I don't recall.

24         Q.  Okay.  Were the documents presented to

```
 1    her right-side up or upside-down?

 2            A.   Right-side up.

 3            Q.   Okay.  Did she express any confusion

 4    about signing the document?

 5            A.   No.

 6            Q.   "Acknowledgment" has a specific meaning

 7    for a notary public; is that correct?

 8            A.   Yes.

 9            Q.   What is that meaning?

10            A.   Just acknowledging that they're signing

11    the document for its purposes and they understand

12    what it means and that I am witnessing it.

13            Q.   Did you ask Ms. Engelhorn for ID?

14            A.   I know her.  She's personally known to

15    me; so I did not, no.

16            Q.   So you don't have to ask someone for ID

17    when they're known --

18            A.   Not when they're personally known to

19    me.

20            Q.   And at that point she was personally

21    known to you.

22                 And you said that you run through a

23    script for both Ms. Engelhorn and other people who

24    were signing documents that you are notarizing,
```

1    and that script says -- you ask that the witness

2    is signing of their own freewill?

3             A.   Mm-hmm.

4             MR. HENDERSON:   Objection.

5             Q.   What else do you ask?

6             A.   That they are signing of their own

7    freewill and no one is forcing them to do so and

8    they want to sign the document.

9             Q.   And you asked those questions of

10   Ms. Engelhorn with respect to Exhibit 2?

11            A.   Yes.

12            Q.   Why don't you take a look at Exhibit 3

13   as well.

14            A.   Well, I just did a blanket one that I'm

15   here to notarize documents for you and you're

16   signing them of your own freewill.

17            Q.   Okay.  So you didn't run it over again?

18            A.   No.  Not three times, no.

19            Q.   But you were satisfied that she

20   answered that she was signing the documents of her

21   own freewill?

22            A.   Yes.

23            Q.   And you were satisfied yourself that

24   she was not confused about the documents?

1   date?

2          A.   Yes.

3          Q.   And with respect to this document, you

4   said previously you asked your normal script to

5   ensure that the signatory was signing of their own

6   freewill?

7          A.   Yes.

8          Q.   That applied to both Exhibit 2 and

9   Exhibit 3; is that correct?

10         A.   Yes.

11              MR. HENDERSON:   Objection.

12         Q.   And you're -- you are -- at the time,

13   you were, in fact, satisfied that she was signing

14   of her own freewill --

15         A.   Yes.

16              MR. HENDERSON:   Objection.

17         Q.   -- in Exhibit 3?

18         A.   Mm-hmm.

19         Q.   Yes?

20         A.   Yes.

21         Q.   Thank you.

22              Okay.  Did you read Exhibit 3?

23         A.   They didn't -- I was not given the

24   documents open.  I was given signature pages,

1    was not signing of his freewill?

2         A.   No.

3         Q.   Did he appear intoxicated or under the

4    influence of drugs?

5         A.   No.

6         Q.   Did he appear coerced?

7         A.   No.

8         Q.   Okay.  Let's look at the next page of

9    that document, which is page 26.  And do you see

10   that says, "Schedule A to the Foregoing

11   Irrevocable Trust"?  Do you see that?  It has one

12   word on it, substantively; right?

13        A.   Mm-hmm.

14        Q.   What's that word?

15        A.   $10 million.

16        Q.   All right.  And then there's a

17   signature block for that but no acknowledgment

18   form; correct?

19        A.   Mm-hmm.

20        Q.   And is that again, as witness,

21   Mr. Reichert on the top line?

22        A.   Yes.

23        Q.   And that's you on the second line?

24        A.   Yes.

1        Q.  And that's Ms. Engelhorn's signature?

2        A.  Correct.

3        Q.  So this means that Ms. Engelhorn signed

4   this page of Exhibit 2 in your presence?

5        A.  Yes.

6        Q.  Now, did anybody mention the

7   $10 million, to your recollection?

8        A.  No.  I never heard anything about it

9   until I got this and I read through it.

10       Q.  All right.  But this one, it's not a

11  hard document to read; right? -- a hard page to

12  read?

13            MR. HENDERSON:  Objection.

14       A.  I had no clue what it meant or what it

15  was in regards to.

16       Q.  Do you remember anything about a

17  $10 million transfer of funds --

18       A.  No.

19       Q.  -- from Ms. Engelhorn to Mr. Bolog?

20       A.  No.

21       Q.  Before or after?

22       A.  No.

23       Q.  So, throughout the transaction, you

24  didn't realize that, in substance, Ms. Engelhorn

```
 1   was giving $10 million for the benefit of

 2   Mr. Bolog?

 3              MR. GANSLER:  Objection.

 4              MR. HENDERSON:  Objection.

 5        A.  No.

 6        Q.  Okay.

 7              All right.  Let's put that one aside.

 8   Let's put 3 aside, and let's look at Exhibit 4.

 9              So do you have Exhibit 4 in front of

10   you, Ms. Mayo?

11        A.  Yes.

12        Q.  So this is titled "Transfer

13   Instructions," misspelled.

14              Do you see that?

15        A.  Yes.

16        Q.  And it's regarding "transfer of funds,"

17   also misspelled.

18              Do you see that?

19        A.  Yes.

20        Q.  Do you know who drafted this document?

21        A.  No.

22        Q.  So it also has a signature block but no

23   acknowledgment form; correct?

24        A.  Yes.
```

Sarah K. Mayo - June 2, 2025                    46
Video Deposition

```
 1          Q.  And it says, "Signed, sealed, and

 2   delivered in the presence of...," and there's two

 3   signatures there.

 4               Do you see that?

 5          A.  Yes.

 6          Q.  And is the first one Mr. Reichert?

 7          A.  Yes.

 8          Q.  And is the second one you?

 9          A.  Yes.

10          Q.  And then that's signed by Ms. Engelhorn

11   and sealed?

12               Do you see that?

13          A.  Yes.

14          Q.  So does this mean that you, in fact,

15   witnessed Ms. Engelhorn's signature?

16          A.  Yes.

17          Q.  And now this one is dated October 12th

18   of 2021.

19               Do you see that?

20          A.  Yes.

21          Q.  But was it signed, in fact, at the same

22   time as Exhibits 3 and -- Exhibits 2 and 3?

23          A.  Yes.

24          Q.  All right.  And it's not you dating it;
```

BEACON COURT REPORTING SERVICES
(774) 678-4255

1    it's someone else --

2              A.   No.

3              Q.   -- dating it; correct?   Okay.

4                   And this is also a short document.   Do

5    you remember if you read it?

6              A.   No.

7              Q.   Were you satisfied -- although this

8    doesn't have an acknowledgment form, Ms. Engelhorn

9    signed all these documents in one sitting?   Do you

10   remember that?

11             A.   Yes.

12             Q.   And did Mr. Bolog explain this document

13   to Ms. Engelhorn as well?

14             A.   I'm not sure.

15             Q.   Okay.   But he generally explained

16   documents to her?

17             A.   Mm-hmm.   Yes.

18                  MR. HENDERSON:   Objection.

19             Q.   I mean, you don't decide which

20   documents get acknowledged as a notary and which

21   ones just witnessed, but do you recall any

22   explanation for that?

23             A.   No.

24             Q.   Were there any other documents that

Sarah K. Mayo - June 2, 2025                    71
Video Deposition

1   hand the documents to Ms. Engelhorn for her

2   signature on each document?

3        A.  Yes.

4        Q.  And is there any reason why you -- that

5   you were aware of that he would have handed those

6   documents to her upside-down?

7             MR. HENDERSON:  Objection.

8        A.  Not that I was aware.

9        Q.  And did you see whether the documents

10  were upside-down?

11       A.  No, I did not see that.

12       Q.  And had she signed those documents

13  while they were upside-down, that would have been

14  something you would have noted?

15       A.  Yes.

16            MR. HENDERSON:  Objection.  Form and

17  substance.

18       Q.  And describe that further.

19       A.  It probably would have been --

20            MR. HENDERSON:  Objection.

21       A.  -- impossible.  Her signature --

22       Q.  Sorry, go ahead, start again.

23       A.  It probably would have been impossible.

24  Her signature would have be a lot more crooked.

1          Q.   Okay.  I am almost finished with my

2    questioning, but let me -- I'm going to ask you --

3    well, do you have any reason to believe, from your

4    personal observations, that Ms. Engelhorn was in

5    an alcohol-induced condition when she signed these

6    documents?

7               MR. HENDERSON:  Objection.

8          A.   No.

9          Q.   I'm going to ask you this.  I'm going

10   to ask you a bunch of statements and ask you if

11   they're true or not, to your personal knowledge,

12   having been there at the time these documents were

13   signed.

14               That, on or about October 11, 2021,

15   Ms. Engelhorn was vacationing in Cape Cod,

16   Massachusetts -- that she was vacationing in

17   Cape Cod, Massachusetts.

18          A.   Yes.

19          Q.   Is it your understanding that this was

20   a vacation home or it was her permanent residence?

21               MR. HENDERSON:  Objection.

22          A.   Vacation home, like, a family vacation

23   home.

24          Q.   Did you in any way -- is this statement

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

I, Janet L. Wynne, CSR No. 131793,

Registered Professional Reporter, a Notary Public

in and for the Commonwealth of Massachusetts, do

hereby certify:

That SARAH K. MAYO, the witness whose

deposition is hereinbefore set forth, was duly

sworn by me and that such deposition is a true

record of the testimony given by said witness.

I further certify that I am not related to

any of the parties to this action by blood or

marriage and that I am in no way interested in the

outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my

hand this 3rd day of June, 2025.


                              /s/ Janet L. Wynne
                         _____
                         Janet L. Wynne, Notary Public
                         My Commission expires:
                         January 31, 2031

***THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
DOES NOT APPLY TO ANY REPRODUCTION AND/OR
DISTRIBUTION OF THE SAME BY ANY MEANS UNLESS UNDER
THE DIRECT CONTROL AND/OR SUPERVISION OF THE
CERTIFYING COURT REPORTER***