**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>        Debtor. | Case No. 25-184-ELG<br>(United States Bankruptcy Court<br>for the District of Columbia) |
| Claudia Engelhorn, *et al.*<br><br>        Plaintiffs,<br><br>        v.<br><br>Erik D. Bolog, *et al.*<br><br>        Defendants. | Case No. 1:25-ap-00159<br>(United States Bankruptcy Court for<br>the District of Maryland) |

**THE BOLOG PARTIES' MOTION TO TRANSFER VENUE**

The Bolog Parties[1] respectfully submit this motion (the "Motion") to transfer venue of the above-captioned adversary proceeding Case No. 1:25-ap-00159 from this Court to the United States Bankruptcy Court for the District of Columbia (the "D.C. Bankruptcy Court") pursuant to 28 U.S.C. § 1412 and Rule 7087 of the Federal Rules of Bankruptcy Procedure.  In support of this Motion, the Bolog Parties respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      On September 10, 2024, Plaintiffs (i.e., the "Engelhorn Parties")[2] initiated this action

---

[1] "Bolog Parties" collectively refers to Erik D. Bolog ("Mr. Bolog"), Erik D. Bolog as Trustee of the JAREB Irrevocable Trust, dated October 11, 2021, Science Park Associates, LLC ("Science Park"), and Darnestown Road, Inc. ("Darnestown Road").

[2] "Engelhorn Parties" collectively refers to Claudia Engelhorn, Individually ("Ms. Engelhorn"), and as Trustee of the Whitewater Revocable Trust dated September 30, 2021, as amended ("Whitewater Trust"), and White Pearl, LLC ("White Pearl").

in the Circuit Court for Baltimore City, Maryland under Case No. C-24-CV-24-002631 (the "Civil Action"), later filing a second amended complaint on February 5, 2025 (the "SAC").

2. On June 10, 2025, defendant Swain Landing LaPlata JC, LLC ("Swain Landing" or the "Debtor") removed the Civil Action to this Court [ECF No. 1] and simultaneously moved to transfer it (the "Debtor's Transfer Motion") [ECF No. 3] to the U.S. Bankruptcy Court for the District of Columbia to be adjudicated in connection with its ongoing bankruptcy proceeding entitled *In re Swain Landing LaPlata JC, LLC* (Case No. 25-184-ELG, the "Debtor's Bankruptcy Case").

3. The Bolog Parties filed a *Response* in support of the Debtor's Transfer Motion. *See* ECF No. 16.

4. By contrast, the Engelhorn Parties objected to the Debtor's Transfer Motion, arguing it should be denied entirely. *See* ECF No. 15. In fact, the Engelhorn Parties argued that the entire Civil Action should be remanded to Maryland state court. *See, e.g.*, ECF Nos. 43, 43-1.

5. The Court scheduled a hearing on the Debtor's Transfer Motion for August 4, 2025, which was later adjourned to August 11, 2025.

6. Shortly before that hearing, however, Plaintiffs apparently had a change of heart. On August 7, 2025, the Engelhorn Parties filed proofs of claim against the Debtor in the Debtor's Bankruptcy Case (the "Engelhorn POCs").[3] And on August 8, 2025, the Engelhorn Parties voluntarily dismissed, without prejudice, the claims against Swain Landing in the Civil Action (the "Voluntary Dismissal") [ECF No. 58].

7. The Engelhorn Parties' recent actions only confirm that transfer is appropriate. Through their recent machinations, they have effectively acquiesced in transfer to the D.C.

---

[3] Copies of the Engelhorn POCs are attached hereto as **Exhibit B**.

Bankruptcy Court of some, but not all, of the claims in the Civil Action. In the interests of justice and efficiency, the Court should now finish the job and transfer the remainder. In the Engelhorn Parties' own words, all of their claims belong together as a single civil action: "This Civil Action [i.e., all of it] arises from the conduct of Erik D. Bolog ('Mr. Bolog'), who was Claudia Engelhorn's former attorney, trustee, confidant, advisor and friend." ECF No. 43-1 at 4. Self-evidently, all of Plaintiffs' claims should be heard together, including those related to Swain Landing, for which the Engelhorn Parties allege that Mr. Bolog is jointly and severally liable with the Debtor *and* owes a jaw-dropping $20 million in alleged punitive damages.

8.      The Civil Action remains inextricably linked to the bankruptcy estate of Swain Landing notwithstanding the Engelhorn Parties' eleventh-hour decision—after the Debtor's Transfer Motion was fully briefed and due to be heard—to voluntarily dismiss their causes of action against only the Debtor in this Civil Action (without prejudice) and concurrently re-file the *exact same* claims as proofs of claim against the Debtor in the D.C. Bankruptcy Court. Indeed, the Engelhorn POCs attach the same SAC at issue in this action in support thereof.

9.      Moreover, the Voluntary Dismissal—executed without prejudice under Fed. R. Civ. P. 41(a) shortly before the hearing on the Debtor's Transfer Motion—appears to be a tactical maneuver to reframe this multiparty dispute and undermine the grounds for transfer. Despite the Voluntary Dismissal, the Engelhorn Parties' claims against the Debtor persist in substance through the Engelhorn POCs, and, because dismissal was without prejudice, they may also be refiled in the future. Further, Mr. Bolog's indemnification and contribution claims against the Debtor pending in the D.C. Bankruptcy Court (which are contingent upon the validity and amount of the Engelhorn Parties' claims against the Bolog Parties) directly impact the Debtor's bankruptcy estate. Unified adjudication in the D.C. Bankruptcy Court is therefore essential to promote efficiency, avoid

inconsistent rulings, and serve the principles of bankruptcy administration.

## ARGUMENT

10.    "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see also* Fed R. Bankr. P. 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding, or any part of it, to another district under 28 U.S.C. § 1412—except as provided in Rule 7019(b)."). Indeed, "the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case." *Schmid Pipeline Constr., Inc. v. Columbia Gas Transmission, LLC*, 2019 WL 13340998, at *4 (N.D.W. Va. Oct. 21, 2019) (internal citations omitted).

11.    For all of the reasons previously stated in the Debtor's Transfer Motion [ECF No. 3] and the Bolog Parties' response in support thereof [ECF No. 16], which are respectfully incorporated herein, the Court should transfer venue of this action.  The Civil Action, by the Engelhorn Parties' own admission, constitutes a single case or controversy that should be heard in one forum. *See* ECF No. 43-1 at 4.

12.    Further, Mr. Bolog has filed a proof of claim against the Debtor and an adversary proceeding against the Debtor seeking indemnification and contribution for the Engelhorn Parties' claims against Mr. Bolog concerning the Debtor. *See* Adv. Proc. No. 25-10019. As alleged therein, should the Engelhorn Parties somehow succeed on their claims against Mr. Bolog with respect to the Engelhorn Parties' investment in Swain Landing, any liability Mr. Bolog may face would be derivative of, or caused by, any purported actions and/or conduct of Swain Landing. Given the Engelhorn Parties' demand for more than $20 million in damages—(1) $585,000 in joint and several liability with the Debtor along with prejudgment interest and attorneys' and other

professionals' fees and costs (Claim Nos. XIII and XIV) plus (2) compensatory damages in excess of $75,000 and punitive damages of up to $20 million (Claim Nos. V and VII)—Mr. Bolog's indemnification and contribution claims against the Debtor are significant. These claims require single-court adjudication to prevent inconsistent rulings and duplication. The D.C. Bankruptcy Court, which is familiar with the Debtor's bankruptcy case, assets, liabilities, and subchapter V plan, is best situated to address these interrelated claims. By contrast, fragmenting these matters across different jurisdictions risks inefficiency and prejudice.[4]

13.        The Voluntary Dismissal does not negate the propriety of transfer; if anything, it strengthens the case for transfer. The Voluntary Dismissal is a transparent, *post-hoc* attempt to manipulate this Court's analysis with respect to the Debtor's Transfer Motion by seeking to obscure the Debtor's involvement in the Civil Action. The Voluntary Dismissal seeks only to artificially sever the Engelhorn Parties' claims against the Debtor in this Civil Action. But those claims have not been extinguished or adjudicated—they have simply been recast as proofs of claim in the Debtor's bankruptcy case (*see* Ex. B), not to mention that the Engelhorn Parties could potentially reassert them against Swain Landing at a later date.

14.        The Voluntary Dismissal does not provide a clear division between this Civil Action and the Debtor's bankruptcy proceeding for multiple reasons. *First*, as noted above, the claims against Mr. Bolog related to Swain Landing are still active, as are his contribution and indemnification claims against the Debtor. *Second*, the Engelhorn Parties' claims against Mr. Michael Postal, a part owner of Swain Landing and its managing member, remain pending regardless of the voluntarily dismissal of claims against Swain Landing. And there is no doubt that

---

[4] Although the Bolog Parties have argued that certain claims should be arbitrated, the relevant point here is that the decision whether to compel arbitration should be made by one court as to all such claims. And in any event, the Engelhorn Parties argue that no claims should be arbitrated.

Ms. Engelhorn, Mr. Bolog, and Mr. Postal will all be necessary for discovery in *both* this Civil

Action and Swain Landing's bankruptcy proceeding, as will other witnesses be called for trial or

confirmation testimony in both proceedings as well. If transfer is not effectuated, the parties and

witnesses will likely need to duplicate efforts and expenses necessary for document review and

production, organize and sit for multiple depositions on overlapping topics, and submit to multiple

instances of trial testimony.

15.     The filing of the Engelhorn POCs and the Voluntary Dismissal contradicts the

Engelhorn Parties' previous statements to this Court that their claims against the Debtor should be

adjudicated in Maryland state court.  In their Motion for Abstention and Remand, the Engelhorn

Parties insisted that the involvement of state law issues "heavily militates in favor of the Court

abstaining from hearing the claims asserted in the Civil Action." *See* ECF No. 43-1 at 12.  Notably,

the Engelhorn Parties use the term "Civil Action" to include, *inter alia*, the Engelhorn Parties'

claims against the Debtor. *Id*. at 1.  Indeed, the Engelhorn Parties argued that their "state common

law claim[ ] of . . . constructive trust" against the Debtor was one of the claims that was "the

centerpiece of this litigation." *Id*. at 12.  But by dismissing their claims against the Debtor here

and compelling their adjudication in the D.C. Bankruptcy Court, the Engelhorn Parties have

conducted a complete about-face.[5]

16.     Moreover, because the Voluntary Dismissal was without prejudice under Fed. R.

Civ. P. 41(a), the claims are not extinguished and can be revived either via an adversary proceeding

---

[5] The timing of the Voluntary Dismissal further suggests the possibility of gamesmanship.  In the Debtor's bankruptcy case, the Engelhorn Parties obtained an order extending their deadline to file proofs of claim from July 24, 2025 through August 7, 2025 (*see* Case No. 25-00159, ECF Nos. 37 & 44), an effort that appears designed to facilitate the last-minute Voluntary Dismissal.  *See Nogueras-Cartagena v. Rosello-Gonzalez*, 182 F.R.D. 380, 386 (D.P.R. 1998) ("As all rights in our judicial system, a plaintiff's right to voluntarily dismiss an action must be exercised in good faith and not as an attempt to manipulate jurisdiction.").

in the Debtor's bankruptcy case—or elsewhere if the Engelhorn Parties' obtain relief from the automatic stay or the Debtor's bankruptcy case is dismissed. Allowing such claims to hover unresolved risks future inconsistent rulings if refiled piecemeal in the future.

## CONCLUSION

WHEREFORE, the Bolog Parties respectfully request that the Court grant the Motion and grant such other and further relief as the Court may deem just and proper.

[*Signature Page Immediately Follows*]

Dated:     August 10, 2025

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

By: /s/ Matthew M. Karlan
Matthew M. Karlan*
(signed by Douglas F. Gansler with permission of
Matthew M. Karlan)
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Matthew.Karlan@cwt.com
Telephone: (212) 504-6000

*admitted pro hac vice

*Counsel for Defendants Erik D. Bolog, Individually
and as Trustee of the JAREB Irrevocable Trust
Agreement dated October 11, 2021; Darnestown
Road, Inc.; and Science Park Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 10th day of August, 2025, a copy of the foregoing was served

on counsel of record electronically via CM/ECF, and remaining parties by first class mail.

**Counsel of Record Served via CM/ECF:**
Sam J. Alberts
**Dentons US LLP**
1900 K St NW
Washington, DC 20006

Wes P. Henderson
Patrick Gardiner
**Henderson Law, LLC**
2127 Espey Court
Suite 204
Crofton, MD 21114
*Counsel for Plaintiffs Claudia Engelhorn; Claudia Engelhorn, Trustee; and White Pearl, LLC*

John J. Connolly
William J. Murphy
**Zuckerman Spaeder LLP**
100 East Pratt Street
Suite 2440
Baltimore, MD 21202
*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Maurice Belmont VerStandig
**The VerStandig Law Firm, LLC**
9812 Falls Road #114-160
Potomac, MD 20854
*Counsel for Defendant Swain Landing LaPlata JC, LLC*

**Parties Served Via First Class Mail:**
**Tenacity Investments, LLC**
S/O: Mike Postal
7333 New Hampshire Avenue
Takoma Park, MD 20912

**Michael Postal**
4302 Broken Arrow Court
Apt. 606
Clinton, MD 20735

**POJO LaPlata LLC**
S/O: Anjon Jones
4302 Broken Arrow Court
Clinton, MD 20735

Respectfully,

Douglas F. Gansler (Bar Number: 21010)
Cadwalader, Wickersham & Taft LLP
1919 Pennsylvania Ave N.W.
Washington D.C. 20006
Douglas.Gansler@cwt.com
Telephone: (202) 862-2300

*Counsel for Defendants Erik D. Bolog, Individually and as Trustee of the JAREB Irrevocable Trust Agreement dated October 11, 2021; Darnestown Road, Inc.; and Science Park Associates, LLC*