IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re:<br><br>Swain Landing LaPlata JC, LLC<br><br>Debtor. | Case No. 24-184-ELG<br>United States Bankruptcy Court<br>for the District of Columbia |
| Claudia Engelhorn, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>Erik D. Bolog, *et al*.<br><br>Defendants. | Case No. 25-00159<br>United States Bankruptcy Court<br>for the District of Maryland<br><br>Case No. C-24-CV-24-002631<br>Circuit Court for Baltimore City,<br>Maryland<br><br>**Re: Docket No. 59** |

**OBJECTION OF PLAINTIFFS AND COUNTER-DEFENDANTS
TO THE BOLOG PARTIES' MOTION TO TRANSFER VENUE**

Plaintiffs and Counter-Defendants, Claudia Engelhorn, individually and as Trustee for the Whitewater Revocable Trust, as amended, and White Pearl, LLC (collectively "Plaintiffs" or "Counter-Defendants"), hereby file this objection (the "Objection") to the Bolog Parties' *Motion to Transfer Venue* [Docket No. 59] (the "Motion")[1] pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Objection, Plaintiffs respectfully state as follows:

**PRELIMINARY STATEMENT AND BACKGROUND**

This Honorable Court should deny the Motion because the interests of justice and convenience of the parties do not support the Bolog Parties' gamesmanship and forum shopping,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

and whatever basis once existed for this Action to proceed in the United State's Bankruptcy Court, vanished once Plaintiffs dismissed their claims against the Debtor, Swain Landing on August 7, 2025.[2]

The gravamen of the Bolog Parties' Motion is that because Mr. Bolog may be liable to the Plaintiffs for his role in shunting $585,000 from White Pearl's accounts into Swain Landing's account, under Counts XIII (Statutory Dissolution of Swain Landing); Count XIV (Common Law Dissolution of Swain Landing); Count V (Fraud as to the Swain Landing Transfer); and Count VII (Breach of Fiduciary Duty -generally), this Action must be transferred to the United States Bankruptcy Court in the District of Columbia. [Doc. 59, ¶14].

Specifically, the Bolog Parties assert "[t]he D.C. Bankruptcy Court, which is familiar with the Debtor's bankruptcy case, assets, liabilities, and subchapter V plan, is best situated to address these interrelated claims. By contrast, fragmenting these matters across different jurisdictions risks inefficiency and prejudice." [Doc. 59, ¶12]. The Bolog Parties' argument is disingenuous at best, because, at this very moment, they are seeking to compel arbitration of Whitewater Investment claims, including Counts XIII and XIV. [Doc. 39 n.1].[3] Obviously, the Swain claims cannot be both litigated in the D.C. Bankruptcy Court and at private arbitration. Finally, Movants filed a statement of non-consent stating that they "do not consent to the bankruptcy court's entry of final orders or judgment." [Doc. 14]

---

[2] During the August 11, 2025 hearing, this Honorable Court informed the Parties that it would not consider the issues of abstention and remand until after deciding whether to transfer venue. However, the Plaintiffs assert that the issues raised in their Motion for Abstention and Remand [Doc. 43] are likewise relevant to the question of whether the interests of justice require that this action be transferred to the D.C. Bankruptcy Court.

[3] The Bolog Parties are currently seeking to compel arbitration on all of the so-called "investment claims" which they assert includes the Swain Landing, Science Park, and Darnestown Road fraud. They are not seeking to compel arbitration with respect to Mr. Bolog's orchestrating the transfer of $10 million to the JAREB Irrevocable Trust for his personal benefit.

2

On September 10, 2024, Plaintiffs filed a complaint in the Circuit Court for Baltimore City, Maryland (the "Circuit Court"), commencing a case designated as case number C-24-CV-002631 (the "Circuit Court Action"). The Circuit Court Action stemmed from Mr. Bolog's alleged tortious conduct, who was Claudia Engelhorn's former attorney, trustee, confidant, advisor, and friend.  It is alleged that Mr. Bolog, while employed by Whiteford, Taylor & Preston, LLP ("WTP") and acting within the course and scope of his employment with WTP, and with the aid of his friends, engaged in multiple instances of intentional misconduct wherein he used the Plaintiffs' assets to enrich himself, his business ventures, enrich his friends, and billed the Plaintiffs for his and other WTP employees' time and expenses while doing so.  Once Mr. Bolog's misconduct was highlighted to WTP's management, they conducted an investigation into Mr. Bolog's actions, uncovered misconduct, and terminated him. Mr. Bolog's misconduct can be delineated into subcategories: (1) a fraudulent $10 Million so-called "Gift" to the JAREB Irrevocable Trust; (2) embezzlement to save Mr. Bolog and Michael Postal ("Mr. Postal")'s investment in the Science Park Property; (3) fraud and embezzlement into Mr. Bolog's company, Darnestown Road, Inc.; and (4) embezzlement and fraud related to the Debtor, Swain Landing.

The Debtor's principal, Michael Postal, and Mr. Bolog are long-term friends and business partners.  Despite effectuating service on both Mr. Postal and Swain Landing long before the Debtor initiated the D.C. Bankruptcy on May 15, 2025, neither Mr. Postal nor Mr. Postal ever filed an answer in the Circuit Court Action.

Meanwhile, the Bolog Parties effectively lost every substantive motion they filed and had lost every motion filed against them.  On January 27, 2025, the Circuit Court denied the Bolog

3

Parties' Motions (A) to Strike, (B) For More Definite Statement, and (C) to Dismiss.[4]  On January 31, 2025, the Circuit Court denied their Motion for Protective Order.  On April 9, 2025, the Circuit Court granted Plaintiffs' Motion to Compel the Bolog Parties' written discovery responses and document production.  The Debtor filed a Notice of Bankruptcy on May 15, 2025.[5]  Thereafter, the Circuit Court denied the Bolog Parties' Petition to Compel Arbitration on June 4, 2024.  Then, on June 10, 2025, the Debtor filed a Notice of Removal in the Circuit Court Action, seeking to remove *all* the claims and counterclaims, not just those that pertained to the debtor.  The date the Debtor first sought removal is significant because the Parties were scheduled to attend a hearing the following day on June 11, 2025 on Plaintiffs' Motion to Dismiss the Counterclaim and Plaintiffs' Motion for Sanctions for the Bolog Parties' failure to comply with the Court's Order compelling discovery.

The Bolog Parties, dissatisfied with the Circuit Court of Baltimore City, endeavored with Mr. Bolog's friend and co-Defendant Michael Postal (Debtor's Principal), to shop for a new forum which they hoped would be friendly to Mr. Bolog's cause.

## **STANDARD OF REVIEW**

"On motion and after a hearing, the court may transfer an adversary proceeding, or any part of it, to another district under 28 U.S.C. § 1412—except as provided in Rule 7019(b)." USCS Bankruptcy R 7087. "A district court may transfer a case or proceeding under title 11 [11 USCS §§ 101 et seq.] to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C.S. § 1412.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

[4] The Court only ordered that Ms. Engelhorn disclose her address.
[5] The Debtor filed the D.C. Bankruptcy on the same date.

4

might have been brought or to any district or division to which all parties have consented." 28 U.S.C.S. § 1404 (a).

Neither the Fourth Circuit nor the Maryland Bankruptcy Court, nor the Maryland District Court has ruled whether § 1412 or § 1404 governs" in situations in which a court is considering whether to transfer a case that is "merely 'related to' a bankruptcy proceeding under Title 11. Some Courts in the Fourth Circuit have concluded that § 1412 is the appropriate mechanism for transferring *related to* cases.[6]  *See Yolo Capital, Inc. v. Normand*, 2018 U.S. Dist. LEXIS 13083, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018); *Hilton Worldwide, Inc. Global Benefits Admin. Comm. v. Caesars Entm't Corp.*, 532 B.R. 259, 273 (E.D. Va. 2015); *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 678, 680 (S.D. W. Va. 2005). Irrespective, assuming § 1412 controls, "the movant must show by a preponderance of the evidence that the proposed transfer would promote either the interest of justice or the convenience of the parties." *Cipollone v. Applestein* (In re Va. True Corp.), 2020 Bankr. LEXIS 826, at *13 (Bankr. E.D. Va. Mar. 30, 2020).

The "interest of justice standard" is a broad and flexible one that must be applied on a case-by-case basis. *Hilton Worldwide, Inc. v. Caesars Entm't Corp.*, 532 B.R. 259, 274 (E.D. Va. 2015). In evaluating whether transfer is in the interests of justice under § 1412, courts in our sister jurisdiction examine a number of factors, including:

> (i) the economic administration of the bankruptcy estate; (ii) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (iii) judicial efficiency; (iv) the ability to receive a fair trial; (v) the state's interest in having local controversies decided within its borders; (vi) enforceability of any judgment rendered; and (vii) the plaintiff's original choice of forum.

*Id*.

---

[6] There are no relevant Maryland Bankruptcy for Federal District Court opinions relevant to the questions concerning the transfer of an adversary proceeding. As such, the Parties are forced to rely on authority from outside District.

**ARGUMENT**

Defendants fail to establish by a preponderance of the evidence that their requested transfer of venue is in the interests of justice or for the convenience of the parties, and as such, the motion must be denied.

(i) *The economic administration of the bankruptcy estate.*

Proceeding in Maryland or in the District of Columbia will not economically impact the bankruptcy estate. The Debtor is no longer a party to this Action. While the Bolog Parties assert that their indemnification and contribution claims against the estate mandate that these cases must be tried in the same locale as the Swain Bankruptcy, they miss the point. Bolog's claims for indemnification and contribution only arise once Bolog has been adjudged liable to the Plaintiffs for some portion of the Swain damages. This would be true irrespective of where the Civil Action was to be tried in the District of Columbia, Maryland, or elsewhere. Finally, the Bolog Parties are seeking to compel arbitration of claims that are "related to" the Swain Bankruptcy, which arguably would further complicate the efficient administration of the bankruptcy estate. The movants have not met their burden by a preponderance of the evidence.

(ii) *The presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending.*

Only the Swain-Adjacent claims are arguably "related to" Swain Landing's Bankruptcy. *See* Count V and VII (only to the extent that they concern the $585,000 transfer to Swain Landing). The overwhelming majority of the claims are not even *related to* Swain Landing;[7] *i.e.*, the Claims

---

[7] The remaining thirteen causes of action in the Second Amended Complaint have no connection to Swain Landing whatsoever, these are: Count I (Fraud-JAREB); Count II (Negligent Hiring/Retention); Count III (Fraud-Science Park); Count IV (Fraud-Darnestown); Count VI (Legal Malpractice/Negligence); Count VIII (Rescission of Gift-JAREB); Count IX (Constructive Trust-JAREB); Count X (Constructive Trust - Darnestown); Count XV (Declaratory Judgment – JAREB); Count XVI (Unjust Enrichment – JAREB); Count XVII (Fraudulent Conveyance -Science Park); Count XVIII (Fraud-Science Park); and Count XIX (Unjust Enrichment- Science Park). These will be referred to collectively as the "Unrelated Claims."

surrounding the $10,000,000 transfer to the JAREB Trust, the $4,655,765 Science Park transaction, and the $350,000 Darnestown Road transaction. If not mandatory abstention, these claims will be subject to permissive abstention and equitable remand. This factor weighs in favor of transferring the Swain-Adjacent claims only.

(iii)    *Judicial efficiency;*

The Parties have been litigating the Civil Action in the Circuit Court in Maryland since September 2024, almost a year before the Debtor removed this case and attempted to transfer venue to the D.C. Bankruptcy Court. The Debtor is not a party to this Action. If the case were transferred and proceeded to trial, the trial would be in the U.S. District Court for the District of Columbia, not the bankruptcy court. So the question is whether trying the remaining claims in a non-bankruptcy court in Maryland is less efficient than trying them in a non-bankruptcy Court in D.C. The Debtor is not a party, and to the extent that Mr. Bolog is found liable to the Plaintiffs for the Swain transaction and he acquires a claim for indemnification or contribution against the Debtor, the fact that the verdict was entered in Maryland as opposed to DC will not affect judicial efficiency on the Swain claims. However, it will significantly hinder judicial efficiency on the non-Swain Claims, for example, the return of the $10 million in the JAREB Trust. The Movants have not met their burden of proving this element by a preponderance of the evidence.

(iv)    *The ability to receive a fair trial.*

This factor weighs neither for nor against transfer.

(v)    *The State's interest in having local controversies decided within its borders.*

This factor weighs heavily against transfer. During the August 11, 2025 hearing, the Court inquired as to the similarities between Maryland and the D.C. tort law. This is a nuanced question that requires explanation. D.C. and Maryland applicable law are not identical, and in this case, the

distinction matters a great deal. D.C. Courts may look to Maryland common law for guidance since "the District of Columbia derives its common law from Maryland as of 1801." *West v. United States*, 866 A.2d 74, 79 (D.C. 2005); *In re C.A.P.*, 633 A.2d 787, 790 (D.C. 1993) ("District derives its common law from Maryland and decisions of Maryland courts on questions of common law are authoritative in the *absence of District authority*") (citation omitted); D.C. Code § 45-401 (2001). The two jurisdictions are certainly not identical, and the law has diverged over the course of the 224 years since 1801. In the present case, both DC and Maryland have each adopted Rules of Professional Conduct to govern the Bar and their constituent attorneys. In particular, in this case, Plaintiffs assert that the various transactions and so-called $10 million "gift" are unenforceable under MARPC 1.8 (Md. Rule 19-301.8), prohibiting business transactions between attorneys and clients, and prohibiting the solicitation of a substantial gift from a client to the attorney. Md. Rule 19-301.8. Moreover, the Comments to the rule provide that substantial gifts from clients to their attorneys are presumptively fraudulent. *See* Md. Rule 19-301.8 cmt. 6. In discussing the importance of the MARPC, the Maryland Supreme Court has explained:

> In Maryland, the rules contained in MLRPC do not constitute "self-imposed internal regulations." They are not precatory guidelines adopted by lawyers or by lower levels of the court system, but are rules adopted by this Court (Md. Rule 16-812) in the exercise of its inherent Constitutional authority to regulate the practice of law. *Attorney General v. Waldron, supra*, 289 Md. 683, 426 A.2d 929. Together with the rules governing admission to the Bar, rules pertaining to attorney trust and bank accounts, rules governing the disciplining of lawyers, and other rules governing specific conduct by lawyers (*see*, for example, Rule 16-401), they serve to regulate virtually every aspect of the practice of law, establishing both general and particular standards for how lawyers must handle funds belonging to them or to others and how they may and may not deal with each other, with the courts, with their clients, with adverse parties, with witnesses, and with the community at large.
>
> Unquestionably, so thorough a regulation of an occupation and professional calling, the integrity of which is vital to nearly every other institution and endeavor of our society, constitutes an expression of public policy having the force of law. We made the point with unmistakable clarity in *Waldron* -- that "the power generally to regulate matters regarding the profession and its practitioners, are reposed inherently in the judiciary" (*Waldron*, 289 Md. at 694), that "the obligation of the

judicial branch of government to monitor and manage its own house are not hollow proclamations of power, for the placement of this responsibility with the judiciary represents a recognition of the special, and to a degree, unique relationship that has evolved over the years between the legal profession and the tribunals of justice it serves" ( *Waldron*, 289 Md. at 695), and that, although the Legislature may act "to aid the courts in the performance of their judicial functions," the judicial branch nonetheless retains the "fundamental authority and responsibility" to "carry out its constitutionally required function, an aspect of which . . . is the supervision of practicing lawyers." *Waldron*, 289 Md. at 699. S*ee also In Re Application of Allan S.*, 282 Md. 683, 689 387 A.2d 271, 275 (1978): "Upon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State." MLRPC represents the exercise of that authority, the discharge of that responsibility. ***To the extent, therefore, that the pronouncements of other courts are based on a different view of the function and authority of the Code in their respective States, they are simply not relevant to the Maryland situation.***

MLRPC constitutes a statement of public policy by the only entity in this State having the Constitutional authority to make such a statement, and it has the force of law. The mere fact that lawyers may be disciplined -- even disbarred -- for violating those rules attests to the legal significance of the rules. We thus share the view of the Illinois Supreme Court, expressed in *In re Vrdolyak*, 137 Ill. 2d 407, 560 N.E.2d 840, 845, 148 Ill. Dec. 243 (Ill. 1990), that "as an exercise of this court's inherent power over the bar and as rules of court, the Code operates with the force of law." *See also Succession of Cloud*, 530 So. 2d 1146, 1150 (La. 1988) ("The standards in the Code of Professional Responsibility which govern the conduct of attorneys have the force and effect of substantive law"); *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162 (Alaska 1991).

*Post v. Bregman*, 349 Md. 142, 162-64 (1998).

The JAREB Irrevocable Trust was the recipient of the $10 million transfer and is a trust created for the benefit of Mr. Bolog. JAREB is a Maryland Trust created under the laws of the State of Maryland, drafted by attorneys working for a major Maryland Law firm, facilitated by paralegals located in Maryland, and questions of whether the transfer is void as a result of fraud, undue influence, or duress will turn on questions unique to Maryland law; *i.e.*, the interpretation of the Maryland Rules of Professional Conduct. *See* Md. Rule 19-301.8(c). Similar issues predominate the Darnestown Road, Science Park, and Swain Landing transactions, all of which involved transferring the Plaintiffs' funds wrongfully to various Maryland entities, as they would

be governed by Md. Rule 19-301.8(a) (concerning business transactions). Maryland has an overwhelming interest in having these critical issues governing the conduct of attorneys licensed in Maryland and their conduct in Maryland. This factor weighs heavily against transfer.

(vi)     *Enforceability of any judgment rendered;*

This factor weighs neither for nor against transfer.

(vii)    *The plaintiff's original choice of forum*

This factor weighs heavily against transfer, because Plaintiffs chose Maryland as their original forum.

## **CONCLUSION**

The Movants have failed to establish, by a preponderance of the evidence, that the interests of justice or the convenience of the parties require the transfer of venue to the D.C. Bankruptcy Court. At best, with respect to the Swain Claims and Swain-Adjacent only, Movants have established one of the seven factors, in favor of transfer, that a part of the remaining claims are related to the transfer of $585,000 to Swain Landing. However, the claims arising from the $10 million "Gift," the $350,000 to Darnestown Road, and the $4,655,765 to Science Park have no relation to Swain Landing. Moreover, despite asserting that judicial efficiency requires that these claims be litigated in the D.C. Bankruptcy Court, they themselves are currently seeking to compel arbitration, such that not even the Bolog Parties themselves intend to litigate these claims in the Bankruptcy or District Courts in the District of Columbia.

[*Remainder of page intentionally left blank*]

Respectfully submitted:

/s/      *PDG*
Wes P. Henderson, Esq. (Fed. Bar #15926)
Patrick D. Gardiner, Esq. (Fed. Bar #19729)
HENDERSON LAW, LLC
2127 Espey Court, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

*Attorneys for Plaintiffs and Counter-Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of August, 2025, a copy of the foregoing was sent via CM-ECF on the following:

William J. Murphy, Esq.
John J. Connolly, Esq.
Kirk E. MacKinnon Morrow
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

*Counsel for Defendant Whiteford, Taylor & Preston, LLP*

Douglas F. Gansler, Esq.
Matthew Karlan, Esq.
Zack Schrieber, Esq.
Cadwalader, Wickersham & Taft, LLP
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Counsel for Defendants Erik D. Bolog, Individually,
and as Trustee of The JAREB Irrevocable Trust
Agreement dated October 11, 2021,
Science Park Associates, LLC, and Darnestown Road, Inc*

AND via first-class mail, postage prepaid on the following:

Michael Postal
1801 16th Street N.W., Apt 608
Washington, DC 20009

*Defendant pro se*

POJO LaPlata, LLC
4302 Broken Arrow Court, Apt 606
Clinton, MD 20735

*Defendant pro se*

Tenacity Investment, LLC
7333 New Hampshire Ave., Unit 103,
Takoma Park, MD 20912

*Defendant pro se*

                                                            /s/ PDG
                                    Patrick D. Gardiner, Esq. (Fed. Bar #19729)